JOHN BENDER ET AL. *v.* EDWARD BENDER ET AL.
(SC 18306)

Rogers, C. J., and Katz, Vertefeuille, Zarella and McLachlan, Js.

698

Argued April 22—officially released July 28, 2009

*Howard B. Schiller*, with whom was *Stephen D. Button*, for the appellants (defendants).

*Ronald F. Ochsner*, with whom was *Brendan Schain*, for the appellees (plaintiffs).

*Opinion*

KATZ, J. The defendants, Edward Bender and Clara Bender, in their capacity as executors of the estate of Edward Stebner (decedent), appeal[1] from the judgment of the trial court in favor of the plaintiffs, John Bender and Carl Bender, on their claim for specific performance of a contract for the sale of real property held

---

[1] The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

by the estate. The principal issue in this appeal is whether res judicata barred the plaintiffs from bringing an action in the Superior Court for breach of contract and specific performance of the contract after the Probate Court had denied the plaintiffs' petition for an order for specific performance of the contract. The defendants also challenge the trial court's conclusions that the action could proceed without the residuary beneficiaries of the decedent's will, that there was a valid contract of sale, and that the contract could not be avoided under any of the defenses raised. We conclude that, because the Probate Court lacked jurisdiction over the claims brought in the Superior Court, res judicata did not bar the present action. In addition, we conclude that the trial court properly ordered specific performance of the underlying contract. Accordingly, we affirm the judgment of the trial court.

The record reveals the following procedural history and undisputed facts. On July 16, 2002, the decedent died testate, leaving a will naming the defendants as executors.[2] In addition to specific devises of personal property to the defendants, the will named as residuary beneficiaries the defendants' five grandchildren and the Ebenezer Lutheran Church of Willimantic. The decedent's estate included a parcel of undeveloped land in Hampton (property), which was not specifically devised to any beneficiary. The will expressly authorized the defendants, as executors, to make any division of the estate required therein, to determine what property should be included in each share, and to sell the decedent's real property without the permission or oversight of the Probate Court or any other court.

On or about February 24, 2004, the plaintiffs met with the defendants to discuss purchasing the property. At

---

[2] The decedent and the defendants were not related, but were longtime friends. The defendants are married. John Bender is the defendants' nephew, and Carl Bender is John Bender's son.

that meeting, the plaintiffs and the defendants completed and signed a real estate purchase agreement form conveying the property from the decedent's estate to the plaintiffs. As called for in the agreement, the plaintiffs tendered a deposit of $500 by check. The agreement stipulated that a closing on the property would take place on May 24, 2004. Thereafter, some discussions ensued between the parties' attorneys about the amount of the deposit and the form of the agreement, after which the defendants informed the plaintiffs that they were unwilling to close on the property.

The plaintiffs then filed a petition for an "order of sale of real property" in the Probate Court, seeking to compel the defendants in their capacity as executors to conduct a closing and convey the property. The Probate Court denied the petition.

The plaintiffs did not appeal from the Probate Court's judgment, but instead filed a two count complaint in the Superior Court seeking specific performance and damages for breach of contract. The defendants filed an answer denying that they had entered into a contract and advancing numerous special defenses. Thereafter, the defendants filed a motion for summary judgment on the grounds that: (1) the Superior Court lacked subject matter jurisdiction because the plaintiffs were not before it pursuant to an appeal from the Probate Court's judgment; (2) the plaintiffs' claims were barred by res judicata in light of the previous Probate Court judgment; (3) the defendants lacked authority to complete the real estate transaction; and (4) the plaintiffs had failed to join the decedent's residuary beneficiaries as indispensable party defendants.

The trial court, *Martin, J.*, denied the motion for summary judgment on all grounds. With respect to the defendants' jurisdictional and res judicata claims, the

court first concluded that the plaintiffs' claim for breach of contract, which sought damages, was a distinct action from the plaintiffs' claim for specific performance, which sought an equitable remedy. The trial court concluded that res judicata did not bar a Superior Court action on the breach of contract claim because the Probate Court could not award damages. The trial court further concluded that the Probate Court was not a court of competent jurisdiction for the plaintiffs' specific performance claim because that court has no equitable jurisdiction unless such a claim arises in the context of another matter properly pending before it, which was not so in the present case. The trial court therefore concluded that res judicata did not bar the plaintiffs' claim for specific performance, and, as a result, the plaintiffs were not required to appeal from the Probate Court judgment in order for the Superior Court to have jurisdiction.

After a trial to the court, the trial court, *Robaina, J.*, issued a decision dismissing the plaintiffs' count seeking damages for breach of contract because the plaintiffs had offered no evidence as to damages from the alleged breach, but rendering judgment in favor of the plaintiffs on the count for specific performance.[3] In addressing the defendants' res judicata and jurisdictional defenses, Judge Robaina adopted Judge Martin's decision denying summary judgment as the law of the case. Regarding the merits of the plaintiffs' specific performance count, Judge Robaina found that the agreement between the plaintiffs and the defendants was a valid contract and that specific performance was warranted. In so doing, the trial court rejected the defendants' special defenses as to whether the action could proceed without the residuary beneficiaries and

---

[3] The plaintiffs do not challenge the trial court's dismissal of their count seeking damages for breach of contract.

whether the contract otherwise was unenforceable. This appeal followed.

On appeal, the defendants raise legal and factual challenges to the trial court's judgment that fall into essentially the following three categories. First, they claim that the trial court improperly concluded that the plaintiffs could proceed on their action in light of the res judicata effect of the Probate Court judgment and the plaintiffs' failure to appeal from that judgment. Second, they claim that the trial court improperly concluded that the absence of the decedent's residuary beneficiaries did not defeat the plaintiffs' claim. Third, the defendants claim that the trial court improperly concluded that the contract was enforceable because it improperly found that the agreement: (1) was sufficiently definite and mutually assented to, rather than abandoned by the parties; and (2) was neither the result of mistake nor unconscionable. We disagree and, accordingly, we affirm the judgment of the trial court. Additional facts will be set forth as needed.

I

The defendants raise a jurisdictional claim, which we typically would address as a threshold matter. See *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 85, 952 A.2d 1 (2008). The defendants' claim that the trial court could exercise jurisdiction only if the plaintiffs had appealed from the Probate Court's judgment, however, is entirely dependent on their claim that the Probate Court had jurisdiction in the first instance, which forms the basis of their res judicata argument. Therefore, we begin with the defendants' claim that the trial court improperly determined that the doctrine of res judicata did not bar the plaintiffs from bringing their action in the Superior Court. Specifically, the defendants contend that, because the Probate Court had jurisdiction over the plaintiffs' initial action for specific performance

under General Statutes § 45a-98 (a) (3),[4] the Probate Court's judgment was conclusive.[5] We conclude that the trial court properly entertained the plaintiffs' action because the Probate Court lacked jurisdiction over the plaintiffs' action for specific performance.

---

[4] General Statutes § 45a-98 provides: "(a) Courts of probate in their respective districts shall have the power to (1) grant administration of intestate estates of persons who have died domiciled in their districts and of intestate estates of persons not domiciled in this state which may be granted as provided by section 45a-303; (2) admit wills to probate of persons who have died domiciled in their districts or of nondomiciliaries whose wills may be proved in their districts as provided in section 45a-287; (3) except as provided in section 45a-98a or as limited by an applicable statute of limitations, determine title or rights of possession and use in and to any real, tangible or intangible property that constitutes, or may constitute, all or part of any trust, any decedent's estate, or any estate under control of a guardian or conservator, which trust or estate is otherwise subject to the jurisdiction of the Probate Court, including the rights and obligations of any beneficiary of the trust or estate and including the rights and obligations of any joint tenant with respect to survivorship property; (4) except as provided in section 45a-98a, construe the meaning and effect of any will or trust agreement if a construction is required in connection with the administration or distribution of a trust or estate otherwise subject to the jurisdiction of the Probate Court, or, with respect to an inter vivos trust, if that trust is or could be subject to jurisdiction of the court for an accounting pursuant to section 45a-175, provided such an accounting need not be required; (5) except as provided in section 45a-98a, apply the doctrine of cy pres or approximation; (6) to the extent provided for in section 45a-175, call executors, administrators, trustees, guardians, conservators, persons appointed to sell the land of minors, and attorneys-in-fact acting under powers of attorney created in accordance with section 45a-562, to account concerning the estates entrusted to their charge; and (7) make any lawful orders or decrees to carry into effect the power and jurisdiction conferred upon them by the laws of this state.

"(b) The jurisdiction of courts of probate to determine title or rights or to construe instruments or to apply the doctrine of cy pres or approximation pursuant to subsection (a) of this section is concurrent with the jurisdiction of the Superior Court and does not affect the power of the Superior Court as a court of general jurisdiction."

[5] The defendants also suggested in their reply brief that the plaintiffs had waived any objection to the Probate Court's jurisdiction by initiating the original Probate Court action. Our precedent dictates that jurisdiction over subject matter cannot be conferred on the court by waiver or the consent of the parties. See *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 511, 518, 970 A.2d 583 (2009); *Kozlowski* v. *Commissioner of Transportation*, 274 Conn. 497, 502, 876 A.2d 1148 (2005); *Del Toro* v. *Stamford*, 270 Conn. 532, 542 n.8, 853 A.2d 95 (2004). We therefore reject the defendants' waiver argument.

The record reveals the following additional undisputed facts. The plaintiffs' petition in Probate Court named as respondents the defendants in their capacity as executors of the decedent's estate. The petition requested that the Probate Court "enter an order directing the Fiduciaries to conduct a closing of the Real Estate Purchase Contract and to convey the Property as they have agreed to do." The plaintiffs alleged therein, inter alia, that: the defendants were authorized under the will to sell the decedent's real property without permission of the Probate Court; the plaintiffs and the defendants had entered into a valid real estate purchase contract; and the defendants neither had conducted a closing nor conveyed the property to the plaintiffs in accordance with their contract. The plaintiffs' petition did not state a basis on which they claimed the Probate Court could exercise jurisdiction.

After a hearing, the Probate Court denied the petition, making the following determinations in support of its decision. The court first stated that it "has jurisdiction to approve [the] sale of land in an estate upon petition of executors if it is in the interest of all beneficiaries and is necessary to satisfy claims against the estate." The court then noted that the plaintiffs were not the executors, and that the defendants as the executors had not petitioned the court for permission to sell the land. Finally, the court found that there was no evidence that the proposed sale was in the best interest of the affected beneficiaries or that the sale of the land was necessary to satisfy claims against the estate. The Probate Court's decision did not cite to any statutory ground for jurisdiction, or its lack thereof.

As we previously have noted, Judge Robaina adopted Judge Martin's decision denying the defendants' motion for summary judgment as the law of the case regarding the defendants' res judicata and jurisdictional defenses. As a general rule, "absent exceptional circumstances,

a denial of a motion for summary judgment is not appealable where a full trial on the merits produces a verdict against the moving party . . . ." *Pelletier* v. *Sordoni/Skanska Construction Co.*, 286 Conn. 563, 576, 945 A.2d 388 (2008); id., 577 (reviewing trial court's denial of summary judgment regarding defendant's duty of care because trial court decided, as matter of law, issue of defendant's duty of care prior to trial and no further evidence on issue was presented at trial). We conclude that such circumstances need not exist in the present case because Judge Martin's decision denying the defendants' motion for summary judgment constitutes the law of the case.[6] Therefore, our focus in addressing this claim is the propriety of Judge Martin's decision.

Before addressing the merits of the defendants' claim, we first set forth the proper standard of this court's review and certain well settled principles guiding our resolution of res judicata claims. Whether the trial court properly applied the doctrine of res judicata to the facts of the case is a question of law meriting plenary review. *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 601, 922 A.2d 1073 (2007); *Ammirata* v. *Zoning Board of Appeals*, 264 Conn. 737, 744–45, 826 A.2d 170 (2003); *Gaynor* v. *Payne*, 261 Conn. 585, 595, 804 A.2d 170 (2002). "The doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. . . . If the same cause of

---

[6] To the extent that the defendants both challenge the propriety of Judge Robaina's adoption of Judge Martin's decision as the law of the case and urge this court not to adopt Judge Martin's decision as the law of the case, we need not address the former in light of our plenary review of the res judicata issue.

action is again sued on, the judgment is a bar with respect to any claims relating to the cause of action which were actually made or which might have been made." (Internal quotation marks omitted.) *Powell* v. *Infinity Ins. Co.*, supra, 600; see also *Gaynor* v. *Payne*, supra, 595–96. In the present case, the sole issue is whether the Probate Court is a court of competent jurisdiction over an action for specific performance of a real estate contract.

The general parameters of Probate Court jurisdiction are well settled. "The Probate Court is a court of limited jurisdiction prescribed by statute, and it may exercise only such powers as are necessary to the performance of its duties." *Heussner* v. *Hayes*, 289 Conn. 795, 802, 961 A.2d 365 (2008); see also *Gaynor* v. *Payne*, supra, 261 Conn. 596. A Probate Court may exercise jurisdiction based on statutory authority only when "the facts and circumstances exist upon which the legislature has conditioned its exercise of power." *Heussner* v. *Hayes*, supra, 803. "Ordinarily, therefore, whether a Probate Court has jurisdiction to enter a given order depends upon the interpretation of a statute." (Internal quotation marks omitted.) *In re Michaela Lee R.*, 253 Conn. 570, 581, 756 A.2d 214 (2000). The Probate Court generally has no jurisdiction over equitable claims, the sole exception being when the equitable claim is incidental to, and connected with, the settlement of a particular estate. *Palmer* v. *Hartford National Bank & Trust Co.*, 160 Conn. 415, 429, 279 A.2d 726 (1971) ("[t]he situation . . . in which the Probate Court may exercise equitable jurisdiction must be one which arises within the framework of a matter already before it, and wherein the application of equity is but a necessary step in the direction of the final determination of the entire matter").

Although the trial court analyzed the defendants' res judicata claim regarding the specific performance count

solely on the basis of the Probate Court's lack of equitable jurisdiction, possibly because the defendants never cited § 45a-98 (a) as a basis for jurisdiction in their written or oral argument to that court,[7] the defendants appear to concede that the trial court properly concluded that there is no equitable jurisdiction. We agree. The resolution of the defendants' res judicata claim therefore requires an analysis of the relevant jurisdictional statute, to which we apply traditional principles of statutory construction.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *Tabone*, 279 Conn. 527, 534–35, 902 A.2d 1058 (2006). "The test to determine ambiguity is whether the statute, when

---

[7] We examine § 45a-98 (a) despite the fact that the defendants never raised it in the trial court consistent with our obligation to consider, sua sponte, jurisdictional issues. *Soracco* v. *Williams Scotsman, Inc.*, 292 Conn. 86, 91, 971 A.2d 1 (2009).

read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Tarnowsky* v. *Socci*, 271 Conn. 284, 287 n.3, 856 A.2d 408 (2004). The construction of a statute presents a question of law, over which we exercise plenary review. *State* v. *Tabone*, supra, 534.

We begin our analysis with the text of the relevant statute. Section 45a-98 (a) provides in relevant part: "Courts of probate in their respective districts shall have the power to . . . (3) . . . determine title or rights of possession and use in and to any real, tangible or intangible property that constitutes, or may constitute, all or part of any trust, any decedent's estate, or any estate under control of a guardian or conservator, which trust or estate is otherwise subject to the jurisdiction of the Probate Court . . . ." We note first that neither party has claimed that the statute is plain and unambiguous. Indeed, the broad language of the statute creates several ambiguities. The phrase "determine title" is language traditionally associated with property law, rather than the contract based action at issue in the present case; see, e.g., *Cardillo* v. *Cardillo*, 27 Conn. App. 208, 212, 605 A.2d 576 (1992) (dispute as to whether title had vested in plaintiff upon decedent's death based on joint tenancy and therefore was not part of estate); *Cooper* v. *Cavallaro*, 2 Conn. App. 622, 623, 481 A.2d 101 (1984) (dispute over joint savings accounts and mortgage deed and note each held jointly by defendant and decedent, with right of survivorship); and may be intended to apply only to actions originating in property law. Conversely, as the defendants urge, the phrase may apply broadly to all actions relevant to the ownership and use of property, including contract actions. We also note that the reference to property "that constitutes, or may constitute, all or part of . . . any decedent's estate"; General Statutes § 45a-98 (a) (3); could be intended to limit jurisdiction to disputes over whether

the property at issue belongs to the estate, rather than whether it can be conveyed by the estate.

Accordingly, we turn to the genealogy and legislative history of the statutes governing Probate Court jurisdiction to resolve the ambiguity. The provision that is now codified at § 45a-98 (a) (3) was enacted in 1993. Public Acts 1993, No. 93-279, § 6 (P.A. 93-279). Prior to that 1993 enactment, courts of probate had jurisdiction under § 45a-98 only to grant administration of intestate estates, admit wills to probate, and to call executors, administrators, trustees, guardians and conservators to account. See General Statutes (Rev. to 1993) § 45a-98.[8] Probate jurisdiction was so limited that, prior to the enactment of P.A. 93-279, probate judges even lacked authority to construe will provisions unless the construction was incidental to the determination of a matter already within the court's express statutory jurisdiction. See *Huber* v. *St. Labre Indian School Educational Assn.*, 4 Conn. App. 436, 440, 494 A.2d 629 (1985). At that time, two statutes granted the Probate Court the authority to order a sale of property. General Statutes (Rev. to 1993) § 45a-164[9] provided, inter alia,

---

[8] General Statutes (Rev. to 1993) § 45a-98 provides: "Courts of probate in their respective districts shall have the power to grant administration of intestate estates of persons who have died domiciled in their districts and of intestate estates of persons not domiciled in this state which may be granted as provided by section 45a-303, to admit wills to probate of persons who have died domiciled in their districts or of nondomiciliaries whose wills may be proved in their districts as provided in section 45a-287, and to call executors, administrators, trustees, guardians and conservators to account concerning the estates entrusted to their charge, and to make any lawful orders or decrees to carry into effect the power and jurisdiction conferred upon them by the laws of this state."

[9] General Statutes (Rev. to 1993) § 45a-164 (a) provides in relevant part: "Upon the written application of the conservator of the estate of any person, guardian of the estate of any minor, administrator or trustee appointed by the court, including a trustee of a missing person, or the executor or trustee under any will admitted by probate by the court . . . the court may authorize the sale or mortgage of the whole or any part of . . . any real property in this state of such person, minor, missing person, deceased person or trustee, or of any real property the legal title to which has been acquired

that, upon written application of the *executor* of a will, the Probate Court may authorize the sale of any real property the legal title to which has been acquired by such executor, if the court finds it would be in the best interests of the parties in interest to grant the application.[10] General Statutes § 45a-428[11] granted lim-

by such administrator, executor or trustee, if the court finds it would be for the best interests of the parties in interest to grant the application."

[10] Although the defendants' brief to this court mentions the "power" of the Probate Court to order the sale of real property pursuant to §§ 45a-98 and 45a-164, there is a clear distinction between authority (or power) and jurisdiction. *Tele Tech of Connecticut Corp.* v. *Dept. of Public Utility Control,* 270 Conn. 778, 790, 855 A.2d 174 (2004) ("The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute. . . . Whereas [s]ubject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it . . . the authority to act refers to the way in which that power [to hear and to determine the controversy] must be exercised in order to comply with the terms of the statute." [Citations omitted; internal quotation marks omitted.]). The Probate Court's *jurisdiction* is set forth in General Statutes §§ 45a-98 through 45a-99. The Probate Court's *authority* to order the sale of real property pursuant to § 45a-164 would depend first on that court having jurisdiction over a matter before it under §§ 45a-98 through 45a-99 and second on the circumstances set forth for the exercise of the court's authority under § 45a-164 being satisfied.

[11] General Statutes § 45a-428 provides: "(a) If the Court of Probate finds that the estate of a deceased person is insolvent and if the real property has been specifically devised or if the court finds that the estate of such person is solvent but that there are no assets of the estate, other than real property specifically devised or forbidden by will to be sold or mortgaged, from which debts, taxes and administration charges against the estate may be paid, the court shall order personal notice of the pendency of the application for a decree authorizing the sale or mortgage of such real property to be given to all devisees of such real property whose existence, names and residences can be ascertained by the court and shall order such other notice as it deems advisable to be given to all such devisees whose existence, names and residences cannot be ascertained by the court.

"(b) Except as provided in this section, real property of a decedent whose estate is solvent and either specifically devised by will or forbidden by will to be sold or to be mortgaged shall not be so ordered to be sold or mortgaged without the written consent of the specific devisees or other parties interested as distributees of such real property or of the guardians ad litem or guardians or conservators of the estates of those not legally competent so to consent."

ited authority to the probate courts to order the sale of real property that has been specifically devised or is forbidden to be sold under the terms of a will, allowing such a sale only when it is essential to settle claims against the estate.[12] This court previously recognized the limited scope of Probate Court jurisdiction as to title matters prior to 1993. We explained: "A probate court has no power to make final determinations of title where title is disputed. It may make such incidental determinations of questions of title as are necessary to enable it to carry out its statutory duties . . . but such determinations have no res judicata effect and are not binding upon the adverse claimants. . . . Questions of title, not incidental to a probate court's statutory duties, are left for courts of general jurisdiction to resolve in ordinary actions at common law." (Citations omitted.) *Lenge* v. *Goldfarb*, 169 Conn. 218, 221, 363 A.2d 110 (1975). Thus, prior to the enactment of P.A. 93-279 and its codification at § 45a-98 (a) (3), probate courts enjoyed limited jurisdiction and authority over the disposition of real property.

In 1991, the legislature appointed a task force to study the probate court system and make recommendations for reform. Spec. Acts 1991, No. 91-19. Task force membership consisted of, inter alia, the Probate Court administrator and three Probate Court judges. Among

---

[12] As we previously have noted, in the present case, the Probate Court did not cite to any statute in its denial of the plaintiffs' petition and, indeed, it is not entirely clear whether the Probate Court concluded that it lacked jurisdiction, authority, or both. It appears, however, that the Probate Court may have considered whether it had jurisdiction or authority under §§ 45a-164 and 45a-428, the two statutes that address the sale of real property, as its findings in support of its denial of the plaintiffs' petition for specific performance are consistent with the requisite findings it must make under those statutes. Indeed, in light of its statements that "[t]he court has jurisdiction to approve [the] sale of land in an estate upon petition of [the] executors" and that "[the plaintiffs] are not executors but are family members," the Probate Court implicitly appears to have concluded that the plaintiffs lacked standing to bring the petition under § 45a-164 and hence it lacked jurisdiction.

other topics, the task force was directed to examine the jurisdiction of the probate courts. Spec. Act 91-19, § 1. The task force thereafter submitted its findings in a document captioned "Report to the Governor and the 1992 Session of the Connecticut General Assembly" (Task Force Report). The task force made several major recommendations, including changes to the structure and financing of probate courts. On the issue of jurisdiction, the task force suggested "increasing Probate Court jurisdiction in three areas, which jurisdiction would be concurrent with the Superior Court." Task Force Report, supra, p. 14. One such recommendation was for the probate courts to have concurrent jurisdiction over "trying title to real and personal property *in which a claim is made that said property should be an asset* of a trust, a decedent's estate, or any estate under the control of a conservator or guardian." (Emphasis added.) Id. To accomplish this specific end, the report included draft legislation that proposed the exact language that ultimately was enacted in 1993 by P.A. 93-279, § 6, and codified at § 45a-98 (a) (3). Id., exhibit 3.

The task force proposed additional draft legislation, which also was adopted by the legislature, that would permit a party to remove a claim to the Superior Court that otherwise properly had been brought to the Probate Court under § 45a-98 (a) (3) if the party had a right to a jury trial on that claim under General Statutes § 52-215.[13] See P.A. 93-279, § 7, codified at General Statutes

---

[13] General Statutes § 52-215 provides in relevant part: "The following-named classes of cases shall be entered in the [Superior Court] docket as jury cases upon the written request of either party made to the clerk within thirty days after the return day: Appeals from probate involving the validity of a will or paper purporting to be such, appeals from the actions of commissioners on insolvent estates, and, except as hereinafter provided, civil actions involving such an issue of fact as, prior to January 1, 1880, would not present a question properly cognizable in equity, except that there shall be no right to trial by jury in civil actions in which the amount, legal interest or property in demand does not exceed two hundred fifty dollars or in a summary process case. . . ."

§ 45a-98a.[14] It is noteworthy that, because specific performance is an equitable remedy, there is no right to a jury trial for such actions. See, e.g., *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* 212 Conn. 83, 91, 561 A.2d 917 (1989); *Texaco, Inc.* v. *Golart,* 206 Conn. 454, 458, 538 A.2d 1017 (1988). In contrast, consistent with the task force's stated intent to provide probate courts with jurisdiction over quiet title actions when there was a dispute as to whether the property at issue belonged to the estate and therefore could be distributed, parties to quiet title actions are entitled to jury trials. See *Swanson* v. *Boschen,* 143 Conn. 159, 165, 120 A.2d 546 (1956); *Miles* v. *Strong,* 68 Conn. 273, 286, 36 A. 55 (1896).

Honorable Robert K. Killian, Jr., a task force member and judge of the Probate Court, submitted written testimony to the judiciary committee in which he explained that the task force unanimously had agreed that the

---

[14] General Statutes § 45a-98a provides: "(a) The Probate Court shall have jurisdiction under subdivision (3), (4) or (5) of subsection (a) of section 45a-98 only if (1) the matter in dispute is not pending in another court of competent jurisdiction and (2) the Probate Court does not decline jurisdiction. Before the initial hearing on the merits of a matter in dispute in which jurisdiction is based on subdivision (3), (4) or (5) of subsection (a) of section 45a-98, the Probate Court may, on its own motion, decline to take jurisdiction of the matter in dispute. Before the initial hearing on the merits of such a matter, any interested person may file an affidavit that such person is entitled and intends under section 52-215 to claim a trial of the matter by jury. In that case, the Probate Court shall allow the person filing the affidavit a period of sixty days within which to bring an appropriate civil action in the Superior Court to resolve the matter in dispute. If such an action is brought in the Superior Court, the matter, after determination by the Superior Court, shall be returned to the Probate Court for completion of the Probate Court proceedings.

"(b) If a party fails to file an affidavit of intent to claim a jury trial prior to the initial hearing in the Probate Court on the merits, or having filed such an affidavit, fails to bring an action in the Superior Court within the sixty-day period allowed by the Probate Court, the party shall be deemed to have consented to a hearing on the matter in the Probate Court and to have waived any right under section 52-215 or other applicable law to a trial by jury."

probate courts should have concurrent jurisdiction with the Superior Court in: "(1) trying title to real and personal property in which a claim is made that said property *should be an asset* of a trust, a decedent's estate, or any estate under the control of a conservator or guardian; (2) construction of wills admitted to probate; [and] (3) construction of testamentary or inter vivos trusts." (Emphasis added.) Conn. Joint Standing Committee Hearings, Judiciary, Pt. 6, 1993 Sess., pp. 2181–82. He further explained that "[t]he members agreed that these matters could be heard more quickly in the probate courts. . . . Many probate judges have been hearing title matters for years on an informal basis, successfully acting as negotiators and mediators thus saving the parties time and legal costs and sparing the Superior Court the burden of these cases." Id., p. 2182.

A report from the Probate Court administrator's office (administrator) produced shortly after the enactment of § 45a-98 (a) (3) summarized how the 1993 amendment had affected probate courts. Probate Court Administrator, 1993 Annual Report of the Probate Court Administrator (April 1, 1994) (Probate Court Annual Report). The administrator first noted that "[p]robate [c]ourts now have concurrent jurisdiction with the Superior [Court] in certain matters. . . . They include trying title to personal and real property and construing wills and trusts." Id., introduction. The administrator further explained that, in order to prepare judges for these new areas of jurisdiction, the Connecticut Probate Assembly and the administrator had presented several continuing education programs. Id., p. 1. Although the report cited several programs relating to quiet title type actions,[15] there is no indication that the probate judges

[15] For example, one meeting of the Probate Assembly focused on "the expanded role of the probate court in trying title to real and personal property pursuant to the provisions of Public Act 93-279, which [gave] the probate court concurrent jurisdiction with the [S]uperior [C]ourt over matters of title." Probate Court Annual Report, supra, p. 2. In particular, Attorney Ellen Sostman of Connecticut Attorneys Title Insurance Company

received similar education on contract actions relating to real property.

In sum, the limited incidental jurisdiction exercised by the probate courts over real property prior to 1993, the narrow purpose stated in the task force report, the testimony provided by Judge Killian to the judiciary committee, the legislature's adoption of the exact language proposed by the task force, and the education thereafter provided to probate judges as to property matters solely relating to title, indicate that the legislature intended to grant the Probate Court limited additional jurisdiction. In particular, the legislature intended § 45a-98 (a) (3) to vest the Probate Court with concurrent jurisdiction with the Superior Court to try title to real and personal property in which a claim is made that said property is an asset of a trust, a decedent's estate, or any estate under the control of a conservator or guardian. Such a purpose is entirely consistent with the related grant of jurisdiction to the Probate Court under § 45a-98 (a) (1) to aid in the administration of an estate. Section 45a-98, therefore, does not provide jurisdiction over a breach of contract action, whether to obtain damages or specific performance, simply because the property belongs to an estate.

In the present case, therefore, the Probate Court did not have jurisdiction over the plaintiffs' action for specific performance. The claim involved no dispute as to whether the title to that the property was in fact an asset of the decedent's estate, as required for jurisdic-

had addressed the question "What is Title?" by explaining the different types of title, the layering of title interest, definitions of real property, how title is acquired and held, and how title may be evidenced. Id. Similarly, Attorney Robert Harrington's presentation on "Trying Title to Real Property" gave the judges a framework for examining title issues such as "definitions of real and personal property; a discussion of ownership, title, and methods of passing title to real estate and personal property; and a discussion of the burden of proof and methods of proof in cases involving title of property." Id.

tion under § 45a-98 (a) (3). Indeed, the Probate Court's decision is itself ambiguous as to whether the court concluded that it had jurisdiction over the claim. See footnote 12 of this opinion. Accordingly, because the Probate Court was not a court of competent jurisdiction under § 45a-98 (a) (3) with regard to the plaintiffs' claim for specific performance, res judicata did not bar the plaintiffs from bringing their action in Superior Court.[16] For the same reason, the plaintiffs were not required to appeal from the Probate Court's judgment in order for the Superior Court to have jurisdiction. See *Kerin* v. *Stangle*, 209 Conn. 260, 264, 550 A.2d 1069 (1988) ("When entertaining an appeal from an order or decree of a Probate Court, the Superior Court takes the place of and sits as the court of probate. . . . In ruling on a probate appeal, the Superior Court exercises the powers, not of a constitutional court of general or common law jurisdiction, but of a Probate Court." [Citations omitted.]).

II

We therefore turn to the merits of the trial court's decision granting specific performance. The defendants claim that the trial court improperly rejected two of their special defenses relating to the residuary beneficiaries' absence from the action. Specifically, the defendants claim that, because title to the property in the estate passed by operation of law to the residuary beneficiaries: (1) the defendants lacked authority to sell the property; and (2) the plaintiffs' cause of action must

---

[16] The defendants make a corollary claim that once the Probate Court denied the plaintiffs' petition, the defendants could not convey the land without risking contempt or breaching their fiduciary duties. We first note that the defendants' contractual obligation predated the Probate Court action. In addition, because the Probate Court did not have jurisdiction over the specific performance action, the denial of the plaintiffs' petition was in no way binding on the defendants. Moreover, neither damages for breach of fiduciary duties nor contempt of court sanctions were ever at issue in the Probate Court or the Superior Court, and are not at issue in this appeal.

fail because the residuary beneficiaries were not made parties to the action. We conclude that the trial court properly rejected the special defenses because: (1) the defendants had express authority under the decedent's will to sell the property as part of their duties as executors; and (2) executors may sue and be sued without joining the persons represented by them and beneficially interested in the action.

As we previously have noted, the will named Ebenezer Lutheran Church as a residuary beneficiary as to one third of the residue of the estate and named the defendants' five grandchildren as residuary beneficiaries as to the remaining two thirds of the residue. The will included no specific devises of the decedent's real property. The will authorized the defendants, as executors, to make any necessary division of the estate, and to determine what property should be included in each share. In addition, the will gave the defendants, as executors, express authority to sell all or any part of the decedent's real property without the supervision or permission of the Probate Court.[17]

The record reveals the following additional procedural history. The defendants filed a motion to strike the plaintiffs' complaint for failure to join necessary parties with an interest in the subject of the action, namely, the residuary beneficiaries. The trial court, *Riley, J.*, denied the motion on the ground that the defendants had not properly identified the allegedly necessary parties pursuant to Practice Book § 10-39 (b).[18] The defendants did not file another motion to

[17] The decedent's will provides in relevant part: "I hereby empower my said [f]iduciary to sell at public or private sale . . . all or any part of my real or personal estate . . . without any hearing thereon and without obtaining permission of any probate court or court of like powers in connection therewith, and to sign, execute, acknowledge and deliver any and all proper deeds, conveyances, and other documents in connection herewith."

[18] Practice Book § 10-39 (b) provides: "A motion to strike on the ground of the nonjoinder of a necessary party or noncompliance with Section 17-56 (b) must give the name and residence of the missing party or interested

strike, but they subsequently amended their answer to include an additional special defense relating to this issue. In that special defense, the defendants first claimed that they lacked authority to sell the property because title to the estate had passed by operation of law to the residuary beneficiaries and the sale of the property was not necessary to satisfy claims against the estate. The trial court rejected this claim after finding that there was no limitation in the will preventing the defendants as executors from selling the property unless necessary to satisfy claims against the estate, as alleged in the special defenses. The trial court presumed that the defendants had based this special defense on § 45a-428; see footnote 11 of this opinion; but found that statute inapplicable because it applies to a solvent estate only when property has been specifically devised, or when the sale or mortgage of the property has been forbidden by will. Neither circumstance was implicated in the present case. The defendants also claimed in that special defense that, because title to the disputed property automatically had vested in the residuary beneficiaries, the plaintiffs' cause of action naming only the executors should fail because it omitted indispensable parties. The trial court also rejected this claim on the ground that the defendants had presented no legal authority that required joinder of the residuary beneficiaries.

## A

We first address the defendants' claim that the trial court improperly found that the defendants had authority, as executors, to sell the property. Whether parties to a contract have the authority to create a contract is a question of fact. Cf. *Maharishi School of Vedic Sciences,*

person or such information as the moving party has as to the identity and residence of the missing party or interested person and must state the missing party's or interested person's interest in the cause of action."

*Inc. (Connecticut)* v. *Connecticut Constitution Associates Ltd. Partnership,* 260 Conn. 598, 605–606, 799 A.2d 1027 (2002); *Il Giardino, LLC* v. *Belle Haven Land Co.,* 254 Conn. 502, 531, 757 A.2d 1103 (2000). "[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . We also must determine whether those facts correctly found are, as a matter of law, sufficient to support the judgment." (Internal quotation marks omitted.) *Wyszomierski* v. *Siracusa,* 290 Conn. 225, 237, 963 A.2d 943 (2009).

Both our common law and our statutory law support the trial court's decision that the defendants were entitled to sell the property, which, as we previously have noted, was not specifically devised to anyone, including the residuary beneficiaries. We first note that this court explicitly has recognized that a testator may give an executor the power to sell real property without the permission or supervision of a court. *Gilman* v. *Gilman,* 99 Conn. 598, 607–608, 122 A. 386 (1923) ("A power of sale in this jurisdiction is convenient in the simplest will, and almost a necessity in an instrument which is comprehensive and contemplates a considerable time in the full execution of its provisions. It enables sale of real property pending the settlement of an estate, without the necessity of an application to court for an order, attended perhaps with the expense of a large charge for a surety bond, it facilitates transfer of securities, and in other ways is useful."). The right of a testator to give an executor the power to sell property without the supervision or permission of a court also has been acknowledged in our General Statutes. See

General Statutes §§ 45a-233 (c)[19] and 45a-234 (2).[20] Nothing in these statutes conditions the authority to execute such transactions on the approval of the decedent's beneficiaries. Although, as we previously have noted in part I of this opinion, the statutory scheme limits the power of an executor to sell a decedent's property when the property is specifically devised or is forbidden to be sold,[21] neither circumstance is implicated here.

It is true, as the defendants claim, that, upon the death of an owner of real property, title to the decedent's property passes to his or her heirs. *Stepney Pond Estates, Ltd.* v. *Monroe*, 260 Conn. 406, 433 n.28, 797 A.2d 494 (2002); *Satti* v. *Rago*, 186 Conn. 360, 365, 441 A.2d 615 (1982); *O'Connor* v. *Chiascione*, 130 Conn. 304, 306, 33 A.2d 326 (1943). It also is well settled, however, that an executor has possession and control of a decedent's real property in the course of administering and settling the estate; General Statutes § 45a-321 (a);[22]

---

[19] General Statutes § 45a-233 (c) provides in relevant part: "By an expressed intention of the testator . . . so to do contained in a will . . . any one or more or all of the powers or any portion thereof enumerated in section 45a-234, as they exist at the time of the signing of a will by the testator . . . may be, by appropriate reference made thereto, incorporated in such will or other instrument, with the same effect as though such language were set forth verbatim in such will or other instrument. . . ."

[20] General Statutes § 45a-234 provides in relevant part: "Powers.—The following powers may be incorporated by reference as provided in sections 45a-233 and 45a-236 . . .

"(2) Sell, Mortgage or Exchange Property.—To sell, exchange, alter, assign, transfer, grant options to buy, sign real estate listing agreements; to convey, pledge, hypothecate; and to mortgage, lease and sublease . . . to do any of such acts without an order of any court, at public or private sale or otherwise, upon such terms or conditions . . . and for such consideration as the fiduciary shall deem advisable; to transfer and convey the property or any interest therein, in fee simple absolute or otherwise free of all trusts. . . ."

[21] See footnotes 9 and 11 of this opinion.

[22] General Statutes § 45a-321 (a) provides: "The fiduciary of a decedent's estate shall, during settlement, have the possession, care and control of the decedent's real property, and all the products and income of such real property during such time shall vest in the fiduciary as personal property, unless such real property has been specifically devised or directions have

and this possession relates back to the time of the decedent's death. *Stepney Pond Estates, Ltd.* v. *Monroe,* supra, 433 n.28. When an executor who is in possession of property as part of his or her administrative duties subsequently exercises the power to sell the land, the devisees are deemed never to have taken title. Consequently, "an executor exercising his power to transfer property does not transfer the title from the devisees, but from the estate." Id.

In the present case, the plain language of the will gave the defendants, as executors, the express authority to sell real property belonging to the estate. The defendants were in possession of the property as part of their duties as executors of the estate. Any sale that they entered into constituted a transfer from the estate, not from the beneficiaries. As such, nothing in the record or the law convinces us that the trial court's finding that the defendants had authority to enter a contract for the sale of the decedent's property was clearly erroneous.

B

We next address the defendants' claim that the trial court improperly rejected their special defense that the plaintiffs' action must fail because the plaintiffs did not join the residuary beneficiaries as indispensable party defendants.[23] With respect to our standard of review,

---

been given by the decedent's will which are inconsistent with this section; but the court may order surrender of the possession and control of such real property to the heirs or devisees, or may, during settlement, order distribution of such real property."

[23] The plaintiffs contend that this claim should be rejected because of the fact that the trial court denied the defendants' motion to strike for failure to comply with the rules of practice and that, under Practice Book §§ 10-39 (a) and 11-3, the exclusive remedy for misjoinder of parties, including nonjoinder of indispensable parties, is by motion to strike. See *George* v. *St. Ann's Church,* 182 Conn. 322, 325, 438 A.2d 97 (1980); *W. G. Glenney Co.* v. *Bianco,* 27 Conn. App. 199, 202, 604 A.2d 1345 (1992). We note, however, that the defendants amended their answer to raise the indispensable party issue as a special defense, and the plaintiffs failed to file a motion

we note that the trial court determined only that no legal authority supported the defendants' contention that the residuary beneficiaries must be joined in the action. The trial court made no findings of fact concerning the joinder claim, nor did it base its conclusion on any construction of the will. Moreover, the facts underlying the defendants' joinder claims are undisputed. Accordingly, the trial court's determination that the residuary beneficiaries were not indispensable parties is a question of law, subject to plenary review. See *Webster Bank* v. *Zak*, 259 Conn. 766, 773, 792 A.2d 66 (2002); *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 565, 775 A.2d 284 (2001); *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 156, 757 A.2d 14 (2000).

We first note that General Statutes § 52-106 squarely rejects the defendants' contention. Section 52-106 provides: "An executor, administrator, or trustee of an express trust may sue or be sued without joining the persons represented by him and beneficially interested in the action." Accord Practice Book § 9-11. This court has held that, under § 52-106, a third party bringing an action against an executor as representative of a decedent's estate need not join the decedent's heirs. *Kukanskis* v. *Jasut*, 169 Conn. 29, 31, 362 A.2d 898 (1975). In the present case, as in *Kukanskis*, the plain-

---

to strike the special defense, as permitted under Practice Book § 10-39 (a) (5). Moreover, although the failure to join an indispensable party does not implicate jurisdiction; see *W. G. Glenney Co.* v. *Bianco*, supra, 202; *DeRosa* v. *DeRosa*, 22 Conn. App. 114, 117, 575 A.2d 713 (1990); this court nonetheless has held that, "because of the definition of indispensable party and its relation to the proper disposition of an action, it is necessary for us to review the . . . claim even though [the defendant] did not move to strike the plaintiff's complaint." (Internal quotation marks omitted.) *Hilton* v. *New Haven*, 233 Conn. 701, 723, 661 A.2d 973 (1995). Specifically, the nonjoinder of indispensable parties may violate due process because such parties must be given notice and an opportunity to protect their interests. Id., 722–23. We therefore review the trial court's decisions on the merits of the joinder issue even though the defendants failed to file a proper motion to strike.

tiffs brought the action against the defendants as executors of the will and thus did not need to join the residuary beneficiaries.

Our case law further supports this conclusion. Parties are indispensable only "when their interest in the controversy is such that a final decree cannot be made without either affecting that interest or leaving the controversy in such condition that its final disposition may be inconsistent with equity and good conscience." (Internal quotation marks omitted.) *Hilton* v. *New Haven*, 233 Conn. 701, 722, 661 A.2d 973 (1995). As we previously have noted, the residuary beneficiaries had no special interest in this particular parcel of land, as it was not specifically devised to them. Their only interest was its value as a percentage of their residuary interest, and even that interest was subject to the defendants' express authority to sell property belonging to the estate. Nor is there any evidence that omitting the residuary beneficiaries threatened to create a final disposition inconsistent with equity or good conscience. Cf. *Goodman* v. *Bank of Boston Connecticut*, 27 Conn. App. 333, 341, 606 A.2d 994 (1992) (specific devisee of property is indispensable party in contract action for specific performance of testator's oral promise to convey property to another party).

The defendants cite to several cases for the proposition that, because title to property in the decedent's estate automatically devolved to the beneficiary heirs, they are indispensable parties to claims involving title to such property. These cases, however, involve title disputes over whether a given property belonged to an estate. See, e.g., *Cardillo* v. *Cardillo*, supra, 27 Conn. App. 211 (concluding that residuary beneficiaries are indispensable parties where third party plaintiff claimed that "the decedent's estate has no estate, right, title, lien, or interest in said property" [internal quotation marks omitted]); see also *Dickman* v. *Generis*, 48 Conn.

Sup. 380, 381, 845 A.2d 488 (2004) ("beneficiaries are proper parties . . . to any action to recover estate assets" [internal quotation marks omitted]). Indeed, if an issue before the court is whether the property belongs to an estate, a residuary beneficiary may be an indispensable party because such an action would deprive the heirs of any and all benefit that may accrue from the property. See, e.g., *Cardillo* v. *Cardillo*, supra, 213 ("[t]he effect of declaring the plaintiff to be the sole owner in fee simple would be to deprive the devisees of their shares of title"). Similarly, the beneficiary of a *specific* devise may be an indispensable party to an action because the devisee has a right to that particular piece of property. See, e.g., *Goodman* v. *Bank of Boston Connecticut*, supra, 27 Conn. App. 341. Neither circumstance is implicated here. The residuary beneficiaries will receive their beneficial interest in any property that is sold through the will's requirement of the distribution of sale proceeds and pursuant to § 45a-234 (21).[24] We therefore conclude that the trial court properly rejected the defendants' claim that the residuary beneficiaries must be joined as parties to the Superior Court action.

III

The defendants next claim that the trial court improperly rejected their special defenses that the agreement was not sufficiently definite and certain and that the

---

[24] General Statutes § 45a-234 provides in relevant part: "Powers.—The following powers may be incorporated by reference as provided in sections 45a-233 and 45a-236 . . .

"(21) Distribute in Cash or Kind.—To make distribution of assets of the estate or trust in kind or in cash, or partially in kind and partially in cash, in divided or undivided interests . . . to make such distribution either upon final distribution or during one or more preliminary distributions, at the then current values, as the fiduciary finds to be the most practicable and for the best interests of the distributees; and to make reasonable determinations of said values for the purpose of making distribution if there is more than one distributee thereof, which determination shall be binding upon the distributees . . . ."

parties' conduct indicated that any such agreement was later abandoned for lack of mutual assent. The defendants first contend that, because they believed that the signed agreement was contingent on approval of counsel for the estate and that this "material term" was absent from the agreement, there was never mutual assent to the terms of that contract. They further point to the parties' inability to agree on additional terms after signing that agreement, specifically, the cleanup of the premises, the amount of the deposit and the drafting of the "option contract," as evidence that the parties mutually assented to abandon that initial agreement. We disagree that the trial court's rejection of these claims was improper.

The record reveals the following additional undisputed facts and procedural history. The parties signed a preprinted three page document entitled "Real Estate Purchase Contract" dated February 24, 2004. The top of the document contains the language: "When signed by Buyer and Seller this is intended to be a legally binding contract. If either party has questions about any aspect of this transaction, he/she should consult with an attorney before signing this Contract." The agreement stipulated that the property would be sold to the plaintiffs for $240,000, with a closing to be held on May 24, 2004. The agreement also called for a $500 deposit, which the plaintiffs gave to the defendants after the parties had signed the agreement. The defendants subsequently provided a copy of the agreement to attorney Omar Shepard, Jr., whose law firm the decedent had requested, in his will, that the executors use to settle the estate. Thereafter, the plaintiffs' attorney, Timothy Wentworth, contacted Shepard, and the two attorneys discussed some concerns Shepard had about the amount of the deposit and the form of the agreement. As a result of these discussions, the plaintiffs tendered an additional deposit of $10,000 by check and signed

an option contract for the land, which the defendants never signed. The plaintiffs then attempted several times to schedule a closing on the property. Ultimately, the defendants returned both deposit checks to the plaintiffs and advised the plaintiffs that they were unwilling to close.

At trial, the parties offered conflicting evidence as to their intent. Edward Bender testified that he believed that he needed to get Shepard's approval before doing anything regarding the decedent's estate. He also testified that he had told the plaintiffs that Shepard would have to have the "final say" regarding the terms of the sale. He testified further that, although the parties had spoken about the property, they never had reached any conclusions in terms of a sale price or other details of the sale. Similarly, Clara Bender testified that she had told the plaintiffs that she and Edward Bender needed to talk to an attorney because they could not sell the property themselves. Conversely, John Bender testified that Edward Bender had represented that he had the right to sell the property to anyone at any agreed upon price. Similarly, Carl Bender testified that the defendants never had indicated that they needed the approval of a third party before selling the property. Rather, Carl Bender testified that the parties had discussed sending the agreement to the attorneys merely in order to finalize the details of the sale and conduct the closing.

Judge Robaina made several findings of fact regarding the agreement between the parties. First, the trial court found that the contract was sufficiently specific, as it identified the property in question, the purchase price, and the amount of the deposit. The trial court also found that "the document identified as the 'Real Estate Purchase Contract' is a contract. There is no ambiguity as to its terms." Second, with respect to Shepard's role, the court found that there was nothing in the will to require approval by counsel before the property

could be sold and that there was no evidence that an "offer" to sell was rejected by the defendants after having received Shepard's advice. Finally, the court rejected the argument that the agreement had been abandoned. The court noted that there was no evidence that the defendants ever had claimed that the consideration was inadequate, only that the deposit should be larger, a request to which the plaintiffs had acceded.

We begin by setting out our standard of review. Under well established contract law, a contract must be definite and certain as to its terms and requirements. *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 51, 873 A.2d 929 (2005). In addition, there must be a manifestation of mutual assent to those terms and requirements. *Ubysz* v. *DiPietro*, 185 Conn. 47, 51, 440 A.2d 830 (1981). The defendants' challenges to the agreement's certainty and definiteness and the parties' mutual assent therefore raise questions of whether a valid contract ever existed. It is well settled that the existence of a contract is a question of fact, which we review for clear error. See *Simmons* v. *Simmons*, 244 Conn. 158, 187, 708 A.2d 949 (1998); see also *Housing Authority* v. *DeRoche*, 112 Conn. App. 355, 370, 962 A.2d 904 (2009) (applying clear error review to contract challenge based on lack of mutual assent); *Ziotas* v. *Reardon Law Firm, P.C.*, 111 Conn. App. 287, 302, 959 A.2d 1013 (2008) (applying clear error review to contract challenge based on lack of definiteness of contract term), cert. granted, 290 Conn. 903, 926 A.2d 796 (2009). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not

examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *Stevenson Lumber Co.-Suffield, Inc.* v. *Chase Associates, Inc.*, 284 Conn. 205, 216–17, 932 A.2d 401 (2007).

The agreement itself provides strong evidence to support the trial court's finding that the contract was definite, certain and the product of mutual assent. On its face, the contract unambiguously sets out the essential terms and conditions of the agreement. With respect to the alleged need for Shepard's approval before the agreement was to be finalized, the agreement lends strong support to the trial court's finding to the contrary. As we noted previously, the language at the top of the agreement provides: "When signed by Buyer and Seller this is intended to be a legally binding contract. If either party has questions about any aspect of this transaction, he/she should consult with an attorney *before* signing this Contract." (Emphasis added.) The defendants' initials appear on each page of the agreement, and their signatures appear on the last page. The defendants do not dispute that they did in fact sign the agreement. To the extent that there was conflicting testimony as to whether the parties nonetheless had agreed to Shepard's approval as a condition precedent to the agreement becoming a valid contract, the trial court was entitled to credit the testimony of the plaintiffs over that of the defendants concerning that matter. See *State* v. *Mullins*, 288 Conn. 345, 365, 952 A.2d 784 (2008) ("[W]e may not substitute our judgment for that of the trial court when it comes to evaluating the credibility of a witness. . . . It is the exclusive province of the trier of fact to weigh conflicting testimony and make determinations of credibility, crediting some, all or none of any given witness' testimony." [Citation omitted.]).

Finally, although there was evidence of proposed modifications, the trial court reasonably concluded that such modifications either were not essential terms or were proposed modifications by the defendants that the plaintiffs in fact had accepted.[25] Accordingly, we conclude that the trial court's factual findings underlying its conclusion that the contract was valid are not clearly erroneous.

## IV

Finally, the defendants contend that the trial court improperly failed to conclude that, if a contract was formed, the agreement was a result of mistake and is void as unconscionable. Specifically, the defendants contend that they were unilaterally mistaken as to the value of the property, which, according to their expert, was more than double the price set forth in the contract. They contend that this fact, in conjunction with unspecified "pressure" that the plaintiffs had asserted on them to execute the contract, renders the agreement unconscionable and, therefore, unenforceable. We disagree.

Although we have had no recent occasion to address the effect of a unilateral mistake, this court previously has recognized that "[t]he mistake of [only one] of the

---

[25] The defendants rely on *Friedman* v. *Donenfeld*, 92 Conn. App. 33, 882 A.2d 1286, cert. denied, 276 Conn. 930, 889 A.2d 817 (2005), for the proposition that the agreement between the parties in the present case was not itself a contract because it required a future contract. We note that the present case is clearly distinguishable from *Friedman*. In *Friedman*, the initial writing was written on a stationery pad in the defendant's office and merely memorialized that the plaintiffs had given the defendant a deposit to act as a binder toward an option to purchase certain property. Id., 36. At the time of the signing, the defendant announced his desire to enter a formal contract, and contacted his attorney the next day to draft a formal contract. Id. In the present case, in contrast, the initial writing was captioned "Real Estate Purchase Contract" and indicated that it was intended to be a legally binding contract when signed by the buyer and the seller. At the time of the signing, neither party expressed any concern about a lack of formality.

parties inducing him to sign a contract which, but for the mistake, he would not have entered into, may be a ground in some cases for cancelling the contract . . . . *Snelling* v. *Merritt*, 85 Conn. 83, 101, 81 [A.] 1039 [1911]. . . . Relief is granted in such cases only when the mistake is induced by the conduct of the other party, *or when he seeks unconscionably to take advantage of it.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Lieberum* v. *Nussenbaum*, 94 Conn. 276, 279, 108 A. 662 (1920); accord *Milford Yacht Realty Co.* v. *Milford Yacht Club, Inc.*, 136 Conn. 544, 549, 72 A.2d 482 (1950). The Restatement (Second) of Contracts rule on which the defendants rely, which the Appellate Court more recently has applied, provides: "Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, *and (a) the effect of the mistake is such that enforcement of the contract would be unconscionable,* or (b) the other party had reason to know of the mistake or his fault caused the mistake." (Emphasis added.) 1 Restatement (Second), Contracts' § 153, p. 394 (1981); see *Shoreline Communications, Inc.* v. *Norwich Taxi, LLC*, 70 Conn. App. 60, 65, 797 A.2d 1165 (2002) (applying Restatement [Second] rule); *Gebbie* v. *Cadle Co.*, 49 Conn. App. 265, 276, 714 A.2d 678 (1998) (same). The comment to the Restatement (Second) indicates that, although the law of unconscionability "is not itself applicable to such cases since the unconscionability does not appear at the time the contract is made, the standards of unconscionability in such cases are similar . . . ." 1 Restatement (Second), supra, comment (c), p. 395.

"The classic definition of an unconscionable contract is one 'which no man in his senses, not under delusion,

would make, on the one hand, and which no fair and honest man would accept, on the other.' " *Smith* v. *Mitsubishi Motors Credit of America, Inc.*, 247 Conn. 342, 349, 721 A.2d 1187 (1998). The doctrine of unconscionability, as a defense to contract enforcement, "generally requires a showing that the contract was both procedurally and substantively unconscionable when made—i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party . . . ."[26] (Internal quotation marks omitted.) *Hottle* v. *BDO Seidman, LLP*, 268 Conn. 694, 719, 846 A.2d 862 (2004).

Whether parties are mistaken about a material term of a contract is a question of fact, and therefore subject to review under the clearly erroneous standard. *McBurney* v. *Cirillo*, 276 Conn. 782, 815, 889 A.2d 759 (2006). Similarly, although "the ultimate determination of whether a transaction is unconscionable is a question of law . . . subject to a plenary review . . . the factual findings of the trial court that underlie that determination are entitled to the same deference on appeal that other factual findings command. Thus, those findings must stand unless they are clearly erroneous." *Cheshire Mortgage Service, Inc.* v. *Montes*, 223 Conn. 80, 88, 612 A.2d 1130 (1992).

With this background in mind, we turn to the record, which reveals the following additional facts. The trial court did not make an express finding as to mistake, rejecting the defendants' claim on the basis of having

---

[26] Because unconscionability is itself a defense to contract enforcement, it is unclear under the Restatement (Second) rule whether the mistake itself must rise to the level of substantive unconscionability or whether the mistake simply is one factor to be considered in determining whether enforcement of the contract would be unconscionable. We need not decide this issue in the present case, however, as the defendants have failed to prove both mistake and unconscionability.

failed to prove either procedural or substantive unconscionability. With respect to the procedural prong, the court found that "the parties were in relatively equal positions as to their ability to bargain . . . ." In its rejection of the defendants' special defenses of duress and unclean hands, the court previously had found that, although Edward Bender testified that he had felt "pressured" to sign the agreement, there was no other evidence to support that assertion. With respect to substantive unconscionability, the trial court noted that two appraisals for the property had been presented to the court: (1) a May, 2004 appraisal of $310,000, which was undertaken to determine " 'the current market value of the property' "; and (2) an October, 2007 estimate of $570,000, which was based on development of the land as a twenty lot subdivision.[27] Both estimates had been prepared by the same real estate appraisal company. The court found that the difference between the $240,000 contract price in February, 2004, and the $310,000 estimate in May, 2004, was not so great as to make the terms of the contract oppressive. Although the court did not make an express finding as to mistake, it did find it "noteworthy . . . that it appears that neither appraisal was known to any of the parties at the time the contract was formed."

The defendants have failed to point to any evidence that would demonstrate that these findings were clearly erroneous. Their reliance on Edward Bender's general-

---

[27] The defendants make a vague assertion in their brief that the trial court improperly relied on the May, 2004 appraisal because the plaintiffs had introduced this evidence without a proper foundation. The defendants have not briefed this issue as a separate claim and have cited to no case law regarding this issue to indicate such an intent. Therefore, we do not consider whether the trial court properly could have relied on this evidence. See *State* v. *Madigosky*, 291 Conn. 28, 48, 966 A.2d 730 (2009) (declining to reach issue because "lacking citation to the specific language complained about in connection with the appropriate legal analysis, this claim is inadequately briefed").

ized testimony that he felt "pressured" to execute the agreement, an appraisal performed four years after the execution of the contract, and the defendants' assertion that "[i]t would *appear* that the plaintiffs, as developers, were in a position to know [the property's] true value and took unfair advantage of the defendants' lack of such knowledge"; (emphasis added); do not meet this deferential standard. See *Wasniewski* v. *Quick & Reilly, Inc.*, 292 Conn. 98, 103, 971 A.2d 8 (2009) ("[A] finding [of fact] is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . The credibility of the witnesses and the weight to be accorded to their testimony is for the trier of fact." [Citations omitted; internal quotation marks omitted.]). Accordingly, the trial court properly rejected the defendants' claim of unilateral mistake and unconscionability.

The judgment is affirmed.

In this opinion the other justices concurred.