J-E01005-16

2016 PA Super 152

| | |
|---|---|
| BLACKWOOD, INC., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| READING BLUE MOUNTAIN & NORTHERN RAILROAD COMPANY, | |
| Appellee | No. 1633 MDA 2014 |

Appeal from the Order Entered August 29, 2014
In the Court of Common Pleas of Schuylkill County
Civil Division at No(s): S-3238-08

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, SHOGAN, LAZARUS, MUNDY, OLSON, OTT, AND STABILE, JJ.

OPINION BY BOWES, J.:                                   **FILED JULY 15, 2016**

Blackwood, Inc. ("Blackwood") appeals from an August 29, 2014 order entering summary judgment in favor of Reading Blue Mountain & Northern Railroad Company ("Blue Mountain") in this quiet title action and denying Blackwood's motion to amend its complaint.  We reverse the trial court's refusal to permit Blackwood to amend its complaint.

On November 6, 2008, Blackwood instituted this lawsuit claiming title to land underlying railroad tracks owned by Blue Mountain.  Preliminary objections were sustained to the original complaint as well as to four subsequent ones.  Blackwood's fifth amended complaint, which was filed on January 4, 2011, survived Blue Mountain's preliminary objections.  Therein, Blackwood averred it owned a 2,300 acre tract of land situated in Reilly

Township that was dissected by railroad tracks running "East and West by the rail line of the Reading Blue Mountain and Northern Railroad Company." Fifth Amended Complaint, 1/4/11, at ¶ 6. Based upon a title examination, Blackwood claimed that there was no document of record conferring title to the land under these tracks to Blue Mountain and that Blackwood thereby owned it, as set forth in its chain of title outlined in the complaint.

Blackwood averred that Blue Mountain was asserting ownership to the real estate under its railroad tracks pursuant to two recorded deeds: 1) a deed dated March 29, 1976, between grantors Andrew L. Lewis, Jr. and Joseph A. Castle, as trustees in bankruptcy of Reading Company, to grantee Consolidated Rail Corporation ("Conrail"), and 2) a deed dated December 14, 1990, wherein Conrail granted the same lands described in the March 29, 1976 deed to Blue Mountain. Reading Company, Blackwood averred, never possessed title to the land and therefore did not transfer title to real estate underneath the tracks to Conrail pursuant to the 1976 deed. In its fifth amended complaint, Blackwood set forth that Blue Mountain did not own any land under any railroad tracks that Blue Mountain operated on Blackwood's land.

After Blue Mountain responded, Blackwood filed a motion for summary judgment, again asserting ownership of land under railroad tracks running "generally East and West by the rail line of the Reading Blue Mountain and Northern Railroad Company (the "Railroad")." Plaintiff Blackwood, Inc.'s

Motion For Summary Judgment Pursuant To Pa.R.C.P. 1035.1, et seq., 8/26/13, at ¶ 6. Blue Mountain answered Blackwood's motion for summary judgment and filed a cross motion for summary judgment, as follows. Blue Mountain reported that it actually owned three railroad tracks on Blackwood's 2,300 acres rather than just the one running east and west, which Blue Mountain noted was called both the Tremont Extension and the West End Branch. The other two lines were offshoots of the Tremont Extension and were known as the Swatara Branch and the Middle Creek Extension. Blue Mountain's cross motion for summary judgment claimed ownership of the land under all three of its railroad lines on Blackwood's surrounding acreage.

Blue Mountain established ownership by proving the following facts. Mine Hill and Schuylkill Haven Railroad ("Mine Hill Railroad") built all three sets of tracks. Mine Hill Railroad was created by an Act of the Pennsylvania General Assembly on March 24, 1828, which has not been repealed and will be referred to as Act 96. Act 96 accorded Mine Hill Railroad the power to take title to land in fee simple by eminent domain in order to build railroad lines to mining operations in the area. The Pennsylvania legislature later enacted supplemental legislation authorizing Mine Hill to extend its existing lines. Mine Hill Railroad constructed the three rail routes at issue in this litigation pursuant to these legislative acts authorizing Mine Hill Railroad to exercise eminent domain powers. Blue Mountain's Motion for Cross Motion

for Summary Judgment, 1/29/14, at ¶¶ 52-64, Exhibit F at ¶¶ 8-14. In 1845, Mine Hill constructed the seven-and-a-half-mile stretch of east-west track, then known as the Tremont Extension. *Id.* Exhibit F at ¶¶ 13, 15. In November 1850, Mine Hill built the three-mile branch line on the Tremont Extension that ran north-northwest and became known as the Swatara Branch. *Id.* Exhibit F at ¶ 17. In 1851, Mine Hill added another extension running from the Swatara Branch in a westerly direction, which was labeled the Middle Creek Extension. *Id.* Exhibit F at ¶ 18. Over time, the Tremont Extension became known as the West End Branch. *Id.* Exhibit F at ¶ 21. Portions of the West End Branch, Swatara Branch, and Middle Creek Extension were laid over the 2,300 acres now owned by Blackwood. *Id.* Exhibit F at ¶¶ 13-18.

Mine Hill Railroad owned and operated these three lines continuously until May 1864, when they were leased to the Philadelphia and Reading Railroad. *Id*. Exhibit F at ¶ 20. In 1924, the Philadelphia and Reading Railroad became known as the Reading Company. *Id.* In October 1951, Reading Company purchased all of the remaining shares of Mine Hill Railroad stock in private hands and merged Mine Hill Railroad into Reading Company. *Id.* Exhibit F at ¶ 24. Thus, Reading Company became the owner of all of Mine Hill Railroad's tracks in October 1951. Under the aforementioned deeds described by Blackwood in its fifth amended complaint, Reading Company sold its railroad tracks to Conrail in 1976, and Conrail, in turn, sold

these three rail lines in 1990 to Blue Mountain. *Id.* Exhibit F at ¶ 29. The lines have been in constant use by these various railroads from 1951 until the present day.

On May 16, 2014, approximately one week before the date scheduled for oral argument on the cross-motions for summary judgment, Blackwood filed a motion requesting leave to amend its fifth amended complaint. It asked to assert, in the event that the trial court granted Blue Mountain's cross motion for summary judgment, a right to between three and five private crossings, depending on whether a public crossing still existed, over Blue Mountain's rail lines. By order dated August 29, 2014, the trial court denied Blackwood's motion for summary judgment, granted Blue Mountain's cross motion for summary judgment, and denied Blackwood's motion for leave to amend the fifth amended complaint.

On September 26, 2014, Blackwood filed a timely notice of appeal. Before a three-judge panel of this Court, Blackwood raised two challenges. Blackwood's first issue was that the trial court incorrectly determined that Blue Mountain had title to the land under its three railroad tracks. It also argued that it should have been accorded the right to amend its complaint to assert a statutory right to private crossings over the rail lines.

Regarding its first position, Blackwood contended that Blue Mountain proffered no evidence that Mine Hill Railroad ever complied with the requirements of Act 96 to obtain ownership by eminent domain of the land

beneath the three railroad tracks. We rejected that position based upon established legal principle that, after a lapse of twenty years, a railroad may base its claim to title on the presumption that "the land was paid for, or that there was some form of written grant which has since become lost." *Coxe v. Lehigh Valley R.R. Co.*, 158 A.2d 782, 786 (Pa. 1960); *see also Brankin v. Phila., Newtown & N.Y. R.R. Co.*, 133 A. 563, 564 (Pa. 1926) ("[T]here is, nevertheless, the presumption, after 20 years from the time the right to the damages accrued, that they have been paid."). We thus ruled that Blue Mountain established that there was no genuine issue of material fact that, as of 1976, Reading Company was the legal title holder to the land underlying all three branches at issue and transferred that ownership to Conrail, which deeded it to Blue Mountain. The panel also ruled that Blackwood should have been accorded the right to amend its complaint to assert a claim that it had a right to one private crossing over the tracks.

Re-argument was granted by the court *en banc*, and Blackwood now raises one position, having abandoned its claim to ownership of the land:

> Whether the trial court abused its discretion in denying Blackwood's motion to amend its pleadings so that, in the event the trial court ruled in favor of the railroad on its counterclaim to quiet title, Blackwood could have its claim for the statutory right to private crossings over the rail lines adjudicated?

Appellant's Substitute Brief on Re-argument at 4.

Under Pa.R.C.P. 1033, a party can amend his pleading either with the consent of the other party or with the court's permission. "Leave to amend

lies within the sound discretion of the trial court and the right to amend should be liberally granted at any stage of the proceedings unless there is an error of law or resulting prejudice to an adverse party." **Hill v. Ofalt**, 85 A.3d 540, 557 (Pa.Super. 2014) (quoting **Werner v. Zazyczny**, 681 A.2d 1331, 1338 (Pa. 1996)). Under the pertinent rule:

> A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted.

Pa.R.C.P. 1033. However, amendment is not permitted to present a new cause of action where the statute of limitations has expired. **See Phillips v. Lock**, 86 A.3d 906 (Pa.Super. 2014).

Generally, an abuse of discretion occurs if a complaint is dismissed without leave to amend. **Hill**, **supra**. "There may, of course, be cases where it is clear that amendment is impossible and where to extend leave to amend would be futile. However, the right to amend should not be withheld where there is some reasonable possibility that amendment can be accomplished successfully." **Id**. at 557 (citation and emphasis omitted).

The trial court ruled that Act 96 applies only to private crossings rendered necessary when it was enacted. It also held that the statute of limitations on the cause of action had expired since Act 96 imposed a six-

month limitation on asserting such a claim. Finally, the trial court opined that the late amendment was prejudicial to Blue Mountain. We therefore examine whether: 1) Act 96 permits Blackwood to plead a cause of action for private crossings; 2 Act 96 contains a six-month time bar for presenting such a claim; and 3) the trial court correctly concluded that Blue Mountain would have been prejudiced by the amendment.

We first examine the provision of Act 96 upon which Blackwood relies, § 18, providing (emphases added):

> Sect. 18 *And be it further enacted by the authority aforesaid*, That for the accommodation of all persons owning or possessing land through which the said rail road may or shall pass, and to prevent inconveniences to such person in crossing or passing the same, it shall be the duty of the said company when required, to make, or cause to be made, a good and sufficient causeway or causeways, **wherever the same shall be necessary**, to enable the occupant or occupants of said lands, to cross or pass over or under the same with wagons, carts, and implements of husbandry, as the occasion may require: *Provided*, That the said company **shall in no case be required to make , or cause to be made, more than one such causeway** through each plantation or lot of land, **for the accommodation of any one person** owning or possessing land through which the said rail road may or shall pass, and **where any public road shall cross said rail road, the person owning or possessing land through which the said road shall pass, shall not be entitled to make such requisition** on said company . . . .

Act 96 of the Session of 1827-1828, enacted March 14, 1828. The statute has not been repealed. It thus creates a cause of action for a private crossing. In light of the history of this lawsuit, we carefully set forth the

- 8 -

parameters of such an action by examining the above-emphasized language. First, Act 96 plainly states that a private crossing must be constructed by the railroad only if it is necessary. Hence, in order to prevail, Blackwood must prove that a private crossing is necessary within the meaning of Act 96.

The second emphasized portion of Act 96 is clear and unequivocal. As the entity owning land through which the tracks pass, Blackwood can obtain only **one** private crossing. Blackwood's position in its request to amend was that it was entitled to between three and five private crossings. This assertion is wholly unsupported by the terms of Act 96. That enactment provides that a railroad is required to build no more than one private crossing for the accommodation of any one person owning land over which the railroad tracks traverse. Blackwood's fifth amended complaint pertained solely to the Tremont Extension a/k/a the West End Branch, which dissects its property into northern and southern sections. Blackwood, as the owner of land over which the railroad tracks in question traverse, is permitted to amend the complaint to assert its potential entitlement to a single private crossing.

Finally, under the third emphasized portion of § 18, a landowner can obtain a private crossing only if there is not a public crossing on its land. In its request to amend its fifth amended complaint, Blackwood outlined that there might be a public crossing on its land over the railroad tracks. Blackwood's Motion for Leave to Amend its Fifth Amended Complaint,

5/16/14, at ¶ 18 (emphasis added) ("Section 18 of the Act of 1828 requires [Blue Mountain] to afford Blackwood a minimum of three (3) private crossings, and potentially five (5) private crossings, **depending upon whether or not Public Crossing DOT #592007F still exists**."). Blackwood can prevail on its claim to a private crossing, under the express language of § 18, only if there is no public crossing on its land. In conclusion, Blackwood can assert a cause of action for one private crossing, seeking to establish that there is no public crossing, and that such private crossing is necessary, as envisioned by Act 96.

We cannot agree with the trial court's position that the right to a private crossing under the still-extant statute must be ascertained under the circumstances existing when the railroad tracks were built. Under this reasoning, if a public crossing on a landowner's property was in existence when the tracks were built, the landowner would have had no right to a private crossing. If the public crossing were then removed, the landowner might be entitled to a private crossing under a necessity standard if the lack of a public crossing denied the landowner access to his property due to the existence of the railroad tracks. Under this scenario, a cause of action for a private crossing would arise when the public crossing became unavailable to the landowner.

We now address the statute of limitations issue. Blue Mountain asserts that there is a six-month statute of limitations based upon § 19 of

Act 96, which states (emphases added): "That no suit or action shall be brought or prosecuted by any person or persons **for penalties incurred under this act**, unless said suit or action, shall be commenced **within six months** next after the offence shall have been committed, or the cause of action shall have accrued."  The Act itself imposes certain penalties.  *See* Act 96 §§ 7, 17, 24.   We concur with Blackwood that this language clearly applies only to penalties incurred under the Act.  A right to a private crossing is not a penalty, and § 19 is inapplicable to the right to bring a cause of action for a private crossing created in § 18. *See* 1 Pa.C.S. § 1929 ("The provision in any statute for a penalty or forfeiture for its violation shall not be construed to deprive an injured person of the right to recover from the offender damages sustained by reason of the violation of such statute.").

Nevertheless, the fact that the legislative provision itself does not contain a statute of limitations for a cause of action for a private crossing does not mean there is no applicable statute of limitations.  It appears that, in the absence of another pertinent statute of limitations, 42 Pa.C.S. § 5527(b) would apply.   Section 5527(b) states: "Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years."  42 Pa.C.S. § 5527(b).  *Cf. Estate of Spickler v. County of Lancaster Bd. of Com'rs*, 577 A.2d 923 (Pa.Super. 1990) (no public

crossing ever existed on railroad tracks that dissected property). Simply put, there is no authority in this jurisdiction for the proposition that a cause of action created by statute has no applicable statute of limitations. This result would be contrary to logic and fairness.

Thus, in order to successfully assert its claim to a private crossing, Blackwood must establish that it sought to amend the complaint within the applicable statutory period after its right arose. As noted, in its request to amend the fifth amended complaint, Blackwood averred that there was a public crossing on its land. If that crossing still exists, Blackwood has no right to a private one at all. However, if that public crossing is no longer in operation, then Blackwood's cause of action under Act 96 was triggered when it was removed. Blackwood must be given the opportunity to establish that its request to obtain a private crossing was timely asserted.

The trial court herein also denied amendment based upon a finding that Blue Mountain would have been prejudiced by the amendment since it was sought just before argument on the motion for summary judgment. In *Capobianchi v. BIC Corp.*, 666 A.2d 344 (Pa.Super. 1995), we noted that prejudice sufficient to deny amendment of the pleadings "must be more than a mere detriment to the other party[.]" *Id*. at 346. Furthermore, the "fact that the adverse party has expended time and effort in preparing to try a case against the amending party is not such prejudice as to justify denying the amending party leave to amend[.]" *Id*. (citation omitted). Indeed,

- 12 -

"Denial of a petition to amend, based on nothing more than unreasonable delay, is an abuse of discretion." *Id*. at 347 (citation omitted).

In the instant matter, the trial court's finding of prejudice was premised upon the fact that amendment was sought just as the case was going to be decided by summary judgment as to title to the property under the railroad tracks. Delay in seeking amendment, standing alone, does not warrant denial of amendment. *Id*. Hence, the trial court committed an abuse of discretion in concluding that amendment should not be granted due to prejudice.

In summary, we grant Blackwood the right to amend its fifth amended complaint to assert a claim to a single private crossing. The trial court must decide the applicable statute of limitations and whether Blackwood's cause of action was timely asserted. If the claim is timely and viable due to the lack of a public crossing, the trial court must then determine whether a private crossing is necessary within the meaning of § 18 of Act 96.

We thus affirm the August 29, 2014 order to the extent that it granted Blue Mountain's motion for summary judgment. We reverse the order to the extent that it denied Blackwood the right to amend its complaint.

Application to strike reply brief is denied. Order affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/15/2016