J-A13041-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| GEORGE H. SHOUGH, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAWRENCE SIDONIS, BYLLYE L. | : | No. 1658 WDA 2017 |
| SIDONIS, DONALD R. HOPKINS, | : | |
| SUSAN HOPKINS, KYLE ROBSON, | : | |
| JARRETT ROBSON, BARBARA | : | |
| STEWART, JAMIE SHOUGH, DONALD | : | |
| ROBSON, JANE M. ROSS-SHOUGH, | : | |
| MARK FAULKNER, MARY FAULKNER, | : | |
| LEROY EASTIN, SUSAN M. EASTIN, | : | |
| JOYCE DAY, LINDA L. RIVERS, | : | |
| RONALD L. KRAUSE, CATHY L. | : | |
| KRAUSE, AND THEIR UNKNOWN | : | |
| HEIRS, SUCCESSORS, AND | : | |
| ASSIGNS, AND VANTAGE ENERGY | : | |
| APPALACHIA LLC, SUCCESSOR IN | : | |
| INTEREST TO TANGLEWOOD | : | |
| EXPLORATION, LLC | : | |

Appeal from the Judgment December 11, 2017
in the Court of Common Pleas of Greene County,
Civil Division at No(s):  A.D. No. 949, 2012

BEFORE:  OLSON, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                 FILED AUGUST 21, 2018

George H. Shough ("Shough") appeals from the Judgment declaring the

ownership interests of Shough and others in oil and gas underlying certain

property in Gilmore Township, Pennsylvania ("the Property").  We affirm.

Jennie D. Shough ("Grantor") owned an interest in oil and gas

underlying the Property.  In 1964, Grantor executed a deed ("the 1964 Deed")

severing one thirty-second (1/32) of her interest in the oil produced on the Property, and one-fourth (1/4) of her interest in gas royalties and rentals derived from the Property (the severed oil and gas interests hereinafter referred to as "the Oil and Gas Estate"). At the time she executed the 1964 Deed, Grantor had three children: Mildred K. Elliman ("Elliman"), George H. Shough ("George"), and Mary F. Lampert ("Lampert"). The 1964 Deed expressly conveyed equal one-third (1/3) interests of the Oil and Gas Estate to Elliman ("the Elliman Interest"), Lampert ("the Lampert Interest"), and "George Shough, of Ypsilanti, Washtenaw County, Michigan" ("the Shough Interest"). See Plaintiff's Trial Exhibit "A" (the 1964 Deed).

Grantor's son, George, died in 1993. George was survived by his wife, Jamie Shough ("Jamie"), his daughter, Byllye Sidonis ("Sidonis"), and his son, Shough. George had three other children, each of whom predeceased him: Melba Jo Nichols ("Nichols"), Karen Robson ("Robson") and Ronald D. Shough ("Ronald"). Nichols was survived by her son, Donald R. Hopkins ("Hopkins"). Karen was survived by her sons, Kyle Robson ("Kyle") and Jarrett Robson ("Jarrett"). Ronald had no surviving issue.[1]

_____

[1] We hereinafter refer to George's surviving wife, children and grandchildren, including Shough, as "the Shough Heirs."

Lampert is now deceased. The heirs of Lampert are Mary Faulkner ("Faulkner"), Susan M. Eastin ("Eastin"), Joyce Day ("Day"), Linda L. Rivers ("Rivers"), and Cathy L. Krause ("Krause") (collectively, "the Lampert Heirs").[2]

Elliman, a resident of Connecticut, died intestate on July 30, 2001. She had no surviving parent, grandparent, spouse or issue. At the time of her death, Elliman had incurred $500,000 in medical expenses. In 2012, upon discovering additional assets of Elliman, a representative of Connecticut's Department of Administrative Services ("the Department") was appointed as the administrator of the Elliman Estate.

Shough subsequently contacted the Department, offering $36,000 "to settle Connecticut's claim on [Elliman's] [E]state[,] so that I and the other heirs of the extended family can proceed with pursuing the Pennsylvania Parcel's mineral rights." Lampert Trial Exhibit A (emphasis added). The Department accepted the offer, and stated the following: "In consideration of thirty-six thousand dollars ($36,000.00), the State of Connecticut hereby relinquishes to [] Shough all claims to the mineral rights to the parcel in Western Pennsylvania to the [Elliman Estate]." Plaintiff's Trial Exhibit 2.

On September 17, 2012, Shough filed the instant action seeking a declaratory judgment and to quiet title to the Shough Interest and the Elliman

_____

[2] Ownership of the Lampert Interest is not in dispute. The spouses of Eastin, Day and Rivers are named as parties in Shough's declaratory judgment and quiet title action.

Interest. Shough named as parties the above-captioned appellees, including the Elliman Heirs, the Lampert Heirs and their respective spouses (collectively, "the Faulkner Defendants"), and the remaining Shough Heirs. By his Amended Complaint, Shough asserted that the 1964 Deed's reference to "George Shough, of Ypsilanti, Washtenaw County, Michigan," referred to him, and not to George. Amended Complaint, ¶¶ 39-41. Thus, Shough claimed that he is the owner of the Shough Interest, in its entirety, pursuant to the 1964 Deed.

Shough also claimed that he owns one-fifth (1/5) of the Elliman Interest, by virtue of Pennsylvania's intestacy laws. Shough posited that the other owners of the Elliman Interest are as follows: Sidonis (one-fifth (1/5) interest); Hopkins (one-fifth (1/5) interest); Kyle and Jarrett (an equally divided one-fifth (1/5) interest); and the remaining grandchildren of Elliman (a one-fifth (1/5) interest, to be divided equally among them).

Kyle, Jarrett, Jamie and Donald Robson filed an Answer to Shough's Complaint.

The Faulkner Defendants filed an Answer and Counterclaim, averring that Connecticut intestacy law applies to the Elliman Interest, which results in the equal division of the Elliman Interest among Elliman's siblings or their heirs. Because Elliman had two siblings, George and Lampert, Appellees averred that one-half (1/2) of the Elliman Interest belongs to the Lampert Heirs, and one-half (1/2) to the Shough Heirs.

The trial court described the subsequent relevant procedural history as follows:

> There are three distinct one-third (1/3) interests involved—namely[,] the Lampert Interest, the Elliman Interest and the Shough Interest.
>
> On December 12, 2016, the [trial court] held a non-jury trial on the matter.
>
> On August 1, 2017, docketed August 2, 2017, the [trial court] issued its verdict. In its verdict, the [trial court] found as follows:
>
> > (1) [T]he Grantee in the November 1964 deed referred to as "George Shough, of Ypsilanti, Washtenaw County, Michigan," is George …, son of [Grantor]; (2) the Elliman [I]nterest in its entirety passed pursuant to Connecticut intestate laws in the following manner: one-half (1/2) interest to the heirs of [George], son of [Grantor], and one-half (1/2) interest to the heirs of [] Lampert; (3) [] Kyle [], Jarrett [], Jamie [], and [] Robson own their individual share of a one-half (1/2) share of the Elliman Interest as beneficiaries, devisees, legatees or heirs of George [], son of [Grantor], or his respective beneficiaries, devisees, legatees, or heirs; (4) [] Faulkner, [] Eastin, [] Day, [] Rivers and [] Krause own their individual share of a one-half (1/2) share of the Elliman Interest as beneficiaries, devisees, legatees or heirs of [Lampert], or her respective beneficiaries, devisees, legatees or heirs; (5) [Shough] and all remaining [d]efendants, and all persons, claiming under them, are directed to execute and record with the Greene [C]ounty, Pennsylvania Office of the Recorder of Deeds, any and all documents reasonably required so that all such party's claimed right, title and interest in Elliman and Shough Interests that are contrary to [the trial court's] Opinion and Order, are relinquished of record; (6) [Shough] is barred from seeking reimbursement from the [Faulkner] Defendants for any portion of the Thirty-Six [Thousand] Dollars ($36,000) paid to the State of Connecticut for the release of its claim against the [E]state of Mildred S. Elliman; (7) Rice Energy, on behalf of Vantage Energy Appalachia, LLC, a successor in Interest to

Tanglewood Exploration, LLC and/or other leaseholder is directed to pay bonus moneys, royalties, or any other payment due to the Defendants commensurate with interests pursuant to this Opinion and Order.

Trial Court Opinion, 12/19/17, at 2-3.

Shough filed a Motion for post-trial relief and, thereafter, a Motion for Leave to Amend Plaintiff's Amended Complaint and Answer to Defendants' Counterclaim. On October 19, 2017, the trial court denied both Motions. On October 30, 2017, Shough filed a Motion for reconsideration of the denial of leave to amend his Amended Complaint and an Answer to Defendants' Counterclaim. On that same date, the trial court expressly granted reconsideration. Notwithstanding, Shough filed two Notices of Appeal on November 7, 2017, followed by two Pa.R.A.P. 1925(b) Concise Statements of matters complained of on appeal.[3] On December 18, 2017, the trial court denied, on the substantive merits, Shough's Motion for reconsideration. Judgment subsequently was entered, on December 11, 2017, upon an inquiry from this Court. Thus, the appeal is properly before this Court for disposition. See Pa.R.A.P. 905(a)(5) (providing that "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the date thereof.").

Shough presents the following claims for our review:

_____

[3] This Court subsequently dismissed the appeal docketed at 1657 WDA 2017, as duplicative, while allowing all properly preserved issues to be presented in the instant appeal, docketed at 1658 WDA 2017.

1. Whether the trial court erred in determining that an estate administrator appointed pursuant to Section 4a-16 of the General Statutes of Connecticut cannot sell or transfer the personal property of a decedent that owed money to the State of Connecticut[?]

2. Alternatively, whether the [trial court] erred by failing to recognize Shough's priority claim (over all unsecured creditors and intestate heirs) to the Elliman [] Interest and declaring that the Elliman [] Interest transferred to the heirs of Mildred Elliman, deceased, despite finding that the decedent had an outstanding debt to the State of Connecticut of over $500,000.00; that said debt takes priority over all unsecured claims against the Estate; and that Connecticut's claim against the Estate was relinquished to Shough[?]

3. Whether the trial court erred by its sua sponte decision to bar Shough from seeking reimbursement of the $36,000.00 he paid to the Estate for [] Elliman for the purchase of the Elliman [] Interest because he did not seek reimbursement from additional heirs, although Shough did not request any such reimbursement in the underlying proceedings[?]

4. Whether the trial court abused its discretion by denying Shough's Post-[T]rial Motion for Leave to Amend his pleadings to conform them to the evidence offered and admitted at trial pursuant to [Pa.R.C.P.] 1033, ... solely upon a finding of the potential for additional delay given Pennsylvania's liberal amendment policy, and the absence of any evidence supporting the Faulkner [Defendants'] claim of undue prejudice[?]

Brief of Appellant at 7-8.

Shough first claims that the trial court improperly concluded that the administrator of Elliman's estate ("the Elliman Estate") could not sell or transfer the personal property of Elliman, who owed money to the state of Connecticut. Id. at 19. According to Shough, Christopher M. Roberts ("Roberts") was appointed as the administrator of the Elliman Estate, pursuant

to General Statutes of Connecticut § 4a-15 (2012). Brief for Appellant at 19. Shough asserts that, in this capacity, Roberts had the authority to pay the expenses of Elliman's last illness, her funeral and burial expenses, and to reimburse the State of Connecticut for care and assistance rendered to Elliman. Id.

Shough contends that under Connecticut law,[4] Roberts had the authority to sell Elliman Estate assets in order to settle claims against the Elliman Estate. Id. at 21. According to Shough, pursuant to General Statutes of Connecticut § 45a-235(5) (2012), Roberts had the power "to sell, lease, or otherwise hypothecate any or all rights to oil, natural gas, and minerals, including, but not limited to oil and gas royalties." Brief for Appellant at 21 (internal quotation marks omitted). Shough asserts that Elliman died indebted to the State of Connecticut; the Elliman Estate was worth less than $40,000; and Roberts, the appointed administrator of the Elliman Estate, had the authority to sell estate assets to satisfy Connecticut's claim. Id.

We consider this issue mindful of our standard of review.

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.

_____

[4] Shough does not dispute, in this section, the applicability of Connecticut law.

However, [where] the issue … concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

Stephan v. Waldron Elec. Heating & Cooling LLC, 100 A.3d 660, 664-65

(Pa. Super. 2014) (citation omitted).

Under Connecticut law,

[w]hen construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature…. In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply…. In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extra[-]textual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) Bender v. Bender, 975 A.2d 636 (Conn. 2009).

Connery v. Gieske, 147 A.3d 94, 101 (Conn. 2016).

At the time of Elliman's death, General Statutes of Connecticut § 4a-16 provided for the Commissioner of Administrative Services to be appointed as administrator of a decedent's estate, where the decedent was supported or cared for under a program of public assistance. CONN. GEN. STAT. § 4a-16. Section 4a-16 provided that

[t]he commissioner shall have authority to claim such estate, the commissioner's receipt for the same to be a valid discharge of the liability of any person turning over the same, and to settle the same by payment of the expense of last illness

> not exceeding three hundred seventy-five dollars, expense of funeral and burial in accordance with section 17b-84 and the remainder as partial or full reimbursement of the claim of the state for care or assistance rendered to the decedent. The commissioner shall file with said probate court a statement of the settlement of such estate as herein provided.

CONN. GEN. STAT. § 4a-16 (2001) (emphasis added).

Interpreting this section, the trial court addressed Shough's claim and concluded that it lacks merit. See Trial Court Opinion, 8/2/17, at 10-16 (unnumbered). We agree with the trial court's rationale and conclusion, and affirm on this basis with regard to Shough's claim, with the following addendum.[5]

In his January 13, 2012 letter to Kevin Nodwell, the representative of the Department, Shough made the following offer:

> While the value of [Elliman's oil and gas interests] is undetermined at this time & will only be certain if & when the drilling commences and is successful over the coming years, I am making an immediate offer of $36,000 to settle Connecticut's claim on [Elliman's] [E]state so that I and the other heirs of the extended family can proceed with pursuing the Pennsylvania Parcel's mineral rights. In exchange for the $36,000 payment, we are asking for a release to all claims from the State of Connecticut against [Elliman's] share.

_____

[5] Contrary to Shough's assertions, the Connecticut Supreme Court's decision in Bender is not applicable, as that case involved the sale of real estate, and not personal property. See Bender, 975 A.2d at 643 (describing the underlying petition as seeking an order directing the execution of a real estate purchase contract); 652 (discussing the authority of an executor to sell real property with the permission of the testator, but not the permission of the beneficiaries).

> The release should stipulate that acceptance of this offer constitutes full and final settlement of all claims of the State of Connecticut against the [Elliman Estate].

Lampert Trial Exhibit A (emphasis added). By its express terms, Shough's letter requested the settlement of Connecticut's claim against the Elliman Estate, so that he, and the other heirs, could pursue the mineral rights. The letter includes no offer by Shough to purchase the Elliman Interest. See id.

Further, Connecticut's Department of Administrative Services issued the following response to Shough: "In consideration of thirty-six thousand dollars ($36,000.00), the State of Connecticut hereby relinquishes to [] Shough all claims to the mineral rights to the parcel in Western Pennsylvania to the [Elliman Estate]." Plaintiff's Trial Exhibit 2. Connecticut's response does not reflect that it sold the Elliman Interest to Shough. Rather, the State of Connecticut relinquished its claim against the Elliman Interest. See id.

At trial, Shough acknowledged that his January 13, 2012, letter did not include an offer to purchase the Elliman Interest. N.T., 12/12/16, at 79. Shough also confirmed that he had sent an email to Donald Robson,[6] which stated the following, in relevant part: "With regard to that one[-]third interest, it is my hope and expectation that I will be reimbursed in proportion for the $36,000 I had to send to the State of Connecticut to gain release of the

_____

[6] According to Shough's Amended Complaint, Donald Robson is believed to be the attorney-in-fact for Jamie, Kyle and Jarrett. Amended Complaint at ¶ 11.

- 11 -

state's lien on the mineral rights in [the Elliman Interest]." N.T., 12/12/16, at 114 (emphasis added).

Further, we observe that as the representative of Elliman's Estate, the Commissioner was "subject to the same duties and obligations as are possessed by and imposed upon ... administrators and other fiduciaries." CONN. GEN. STAT. § 4a-15 (2012). As a fiduciary, the Commissioner was required to file an inventory prior to the sale of any property, other than real estate. Id. § 45a-341. The Commissioner filed no inventory for the sale of the Elliman Interest. Thus, the record clearly supports the trial court's finding that Connecticut did not effectuate a sale of the Elliman Interest to Shough. Accordingly, we cannot grant Shough relief on this claim.

In his second claim, Shough argues that, even if the trial court had properly interpreted General Statutes of Connecticut Section 45a-16, it erred in concluding that Section 45a-439 (applying to the residue of the estate) controls the disposition of the Elliman Interest, "notwithstanding Shough's priority claim (over all unsecured creditors and intestate heirs) to the Elliman [] Interest." Brief for Appellant at 22 (some capitalization omitted). Shough asserts that the trial court improperly disregarded Shough's "priority" claim, when it concluded that, pursuant to Section 45a-439, the Elliman Interest passed, in accordance with Connecticut intestacy law, to Elliman's intestate heirs. Id. at 23. According to Shough, Section 45a-439 requires an estate administrator to settle the debts of the estate prior to making any payments

to intestate heirs. Id. Under the trial court's analysis, Shough argues, the inheritance rights of the intestate heirs improperly would have superseded even the claims of the State of Connecticut.[7] Id. at 24.

As set forth above, in his letter to the Department, Shough offered the sum of $36,000 "to settle Connecticut's claim" to the Elliman Interest. Lampert Trial Exhibit A (emphasis added). By its acceptance letter, the State of Connecticut relinquished any claim it had to the Elliman Interest. Plaintiff's Trial Exhibit 2. In its Opinion, the trial court found that Shough voluntarily had paid the State of Connecticut to release any lien it had against the Elliman Interest. Our review of the record discloses no evidence that Shough paid these funds at the request of, or on behalf of, the heirs of the Elliman Estate. See N.T., 12/12/16, at 67 (wherein Shough testified that he sent a check for $36,000 to the State of Connecticut), 111 (wherein Shough acknowledged Stewart's refusal to contribute in advance to the $36,000 payment), 70 (wherein Shough indicated that no other heir contributed to the $36,000 payment), 75 (wherein Shough stated that he did not discuss the matter with the other extended heirs of Elliman). Thus, there is no evidence establishing

---

[7] Shough additionally argues that, following his transaction with the Department, there were no remaining assets left to distribute pursuant to Section 45a-439. Brief for Appellant at 24. As set forth above, the record supports the trial court's finding that Shough did not purchase the Elliman Interest from the State of Connecticut.

that Shough possessed a priority claim against the Elliman Estate, or that the Elliman Estate owed $36,000 to Shough.

Under these circumstances, we agree with the trial court's determination that the Elliman Interest passed through intestate succession, under Connecticut law, and that no payments were due to Shough. See Trial Court Opinion, 8/2/17, at 16-17 (referring to N.T., 12/12/16, at 110-13, and Shough's admission that he voluntarily tendered the $36,000 payment and never sought reimbursement from all of the Elliman Interest heirs). Accordingly, we cannot grant Shough relief on this claim.

In his third claim, Shough argues that the trial court erred by barring Shough from seeking reimbursement of the $36,000 that he paid to the State of Connecticut. Brief for Appellant at 25. Shough contends that the trial court did not refer to any pleading or testimony in support of its assertion that Shough asked for reimbursement in this proceeding. Id. Shough contends that it is manifestly unjust to make such a ruling, based upon a request in the Faulkner Defendants' proposed findings and conclusions. Id. at 26.

Our review of the record discloses that the characterization of Shough's $36,000 payment was at issue throughout this litigation. In his Response to Motion for Summary Judgment filed on October 23, 2013, Shough asserted that he paid $36,000 to the State of Connecticut for the Elliman Interest. Response to Motion for Summary Judgment, ¶ 28. At trial, Shough testified regarding his $36,000 payment to the State of Connecticut. See N.T.,

12/12/16, at 67 (wherein Shough testified that he sent a check for $36,000 to the State of Connecticut), 70 (wherein Shough indicated that no other heir contributed to the $36,000 payment), 75 (wherein Shough testified that he did not discuss the matter with the other extended heirs of Elliman), 114 (wherein Shough testified regarding his email to Donald Robson stating that he hoped for reimbursement of the $36,000).

Our review also discloses that Shough's Amended Complaint asked the trial court to "provide[] for such other and further relief as [the c]ourt deem[ed] just and proper." Amended Complaint at 11. In their Answer to Amended Complaint and Counterclaim, the Faulkner Defendants asked the trial court to "[p]reliminarily and permanently enjoin and forever bar [Shough] … from asserting any estate, right, title, lien or interest in or to the one-half (1/2) Elliman Interest, in whole or in part[.]" Defendants' Counterclaim for Action to Quiet Title at 4 (unnumbered) (emphasis added). The Faulkner Defendants additionally sought "[s]uch other and further relief that the [trial c]ourt deems just and proper." Id. at 5 (unnumbered).

Thus, the characterization of the $36,000 payment was at issue throughout these proceedings, and Shough's claim to the contrary lacks support in the record. Because the trial court's findings are supported in the record, and its legal conclusions are sound, we cannot grant Shough relief on this claim.

In his fourth claim, Shough argues that the trial court abused its discretion by denying Shough's Motion for leave to conform his pleadings to the evidence. Brief for Appellant at 26. Shough cites relevant case law holding that the right to amend pleadings should be liberally allowed. Id. at 27. Shough argues that the trial court denied leave to amend solely because it determined that "to allow for additional delay one year after [the] end of trial on a case that is almost six years old will clearly result in prejudice to all opposing parties." Id. (quoting Trial Court Order, 12/18/17, at 3). According to Shough, "[p]rejudice sufficient to deny amendment of the pleadings, however, must be more than a mere detriment to the other party." Brief for Appellant at 27 (citation and internal quotation marks omitted). Shough argues that the trial court abused its discretion by denying his Motion based solely upon the additional delay. Id.

Our review discloses that in his proposed Second Amended Complaint, Shough changed the basis of his cause of action, and his ownership claim to the Elliman Interest. Sough's proposed Amended Complaint averred that he owned 100% of the Elliman Interest, by virtue of his purchase of the Elliman Interest from the State of Connecticut. See id. ¶¶ 29-36. Shough included additional averments that, prior to her death, Elliman's Medicaid-related debt to the State of Connecticut exceeded $500,000, see Proposed Second Amended Complaint, ¶ 29; under Connecticut law, a debt to the state of Connecticut supersedes any will or intestate inheritance as a priority debt, see

id.; the Elliman Estate owned all personal property, including the Elliman Interest, upon her death, see id. ¶ 31; Shough contacted the Administrator of the Elliman Estate concerning the Elliman Interest, see id. ¶ 32; the Administrator of the Elliman Estate agreed to sell the Elliman Interest to Shough for $36,000, see id. ¶ 33; the Faulkner Defendants are attempting to interfere with Shough's right to 100% of the Elliman Interest, see id. ¶ 35; and the Faulkner Defendants' refusal to recognize Shough's rights constitutes a cloud on Shough's rights, title and interest, as a part owner of the Oil and Gas Estate, see id. ¶ 36.

In its December 18, 2017 Order, the trial court addressed Shough's Motion for leave to file an Amended Complaint as follows:

> Here, [Shough] is asking the [trial court] to vacate its October 19, 2017 Order and grant [Shough] leave to file a Second Amended Complaint and First Amended Answer to Counterclaim.
>
> Pursuant to Pa.[]R.C.P. 1033[,] a party may amend his pleadings to conform the pleading to the evidence offered or admitted. An amendment may be allowed after judgment and allowance of an amendment is within the discretion of the trial court. Such an amendment, however, must not be for a new cause of action or surprise or prejudice the opposing party.
>
> [Shough] argues that his Motion only seeks to amend his pleadings to conform the evidence already offered and admitted at trial. [The Lampert Heirs] aver prejudice in that [they] would be forced to file preliminary objections at this late stage[,] thereby delaying final resolution of this action by requiring additional pleadings and hearings. [The Lampert Heirs] allege that the pleadings [Shough] seeks to amend "are fraught with errors, lack dates, and fail to attach writings supporting the allegations."
>
> [The trial court] finds [the Faulkner Defendants'] argument persuasive. While amendments are granted liberally, to allow for

- 17 -

additional delay one year after the end of trial on a case that is almost six years old will clearly result in prejudice to all opposing parties.

Trial Court Order, 12/18/17, at 1-2 (footnotes omitted).

Thus, the trial court did not deny Shough's Motion solely on the basis of delay, but based upon prejudice the delay caused where the proposed pleading includes errors, lacks dates, and where the pleading failed to attach writings to support the new allegations.  See id.  We discern no abuse of discretion by the trial court in denying Shough's Motion on this basis.[8]  We therefore affirm the Judgment of the trial court.

Judgment affirmed.

_____

[8] Shough relies upon this Court's holdings in Capobianchi v. BIC Corp., 666 A.2d 344 (Pa. Super. 1995), and Blackwood, Inc. v. Reading Blue Mountain, 147 A.3d 594, 600 (Pa. Super. 2016), to support his argument. However, his reliance is misplaced, as the trial court in this case did not deny the Motion based solely on the delay.  Rather, the trial court found prejudice resulting from the delay, where the proposed amended pleading is deficient, requiring the filing of new preliminary objections and further proceedings. See Trial Court Order, 12/18/17, at 1-2.  We discern no abuse of discretion in this regard.  See Somerset Cmty. Hosp. v. Allan B. Mitchell & Assocs., Inc., 685 A.2d 141, 147 (Pa. Super. 1996) (stating that "[a]n amendment will not be allowed, however, when it is against a positive rule of law, where it states a new cause of action after the statute of limitations has run, or when it will surprise or prejudice the opposing party.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/21/2018</u>

# IN THE COURT OF COMMON PLEAS FOR GREENE COUNTY, PENNSYLVANIA
## THIRTEENTH JUDICIAL DISTRICT - GREENE
### CIVIL DIVISION

GEORGE H. SHOUGH,           )

                        )

       PLAINTIFF,         )

                        )

       v.                  )

                        )

LAWRENCE SIDONIS, BYLLYE L. SIDONIS, )
DONALD R. HOPKINS, SUSAN HOPKINS, )
KYLE ROBSON, JARRETT ROBSON, )
BARBARA STEWART, JAMIE SHOUGH, )
DONALD ROBSON, JANE M. ROSS- )      **949 AD 2012**
SHOUGH, MARK FAULKNER, )
MARY FAULKNER, LEROY EASTIN, )
SUSAN M. EASTIN, JOYCE DAY, )
LINDA L. RIVERS, RONALD KRAUSE, )
CATHY L. KRAUSE, and their )
unknown heirs, successors, and assigns, )
and VANTAGE ENERGY APPALACHIA LLC, )
successor in interest to TANGLEWOOD )
EXPLORATION, LLC, )

                        )

     DEFENDANTS.      )

## OPINION PURSUANT TO 1925(a)

**AND NOW** this _19_ day of December, 2017, upon review of the Plaintiff's

Concise Statements of Matters Complained of On Appeal Pursuant to Pennsylvania

Rule of Appellate Procedure 1925(b), this Court now issues the following Opinion

and Order:



## FACTUAL STATEMENT

This action arises from a dispute over the parties' respective interest in the November 7, 1964 Deed. The parties have also asked the Court to interpret several Connecticut Probate Statutes to ascertain whether the Plaintiff is the sole owner of the Elliman Royalty Interest.

There are three distinct one-third (1/3) interests involved--namely the Lampert Interest, the Elliman Interest and the Shough Interest.

On December 12, 2016, the Court held a non-jury trial on the matter.

On August 1, 2017, docketed August 2, 2017, the Court issued its verdict. In its verdict the Court found as follows:

(1) the Grantee in the November 7, 1964 deed referred to as "George Shough, of Ypsilanti, Washtenaw County, Michigan," is George Herbert Shough, son of Jennie D. Shough; (2) the Elliman interest in its entirety passed pursuant to Connecticut intestate laws in the following manner: one-half (1/2) interest to the heirs of George Herbert Shough, son of Jennie D. Shough, and one-half (1/2) interest to the heirs of Mary S. Lampert; (3) Defendants Kyle Robson, Jarrett Robson, Jamie Shough and Donald Robson own their individual share of a one-half (1/2) share of the Elliman Interest as beneficiaries, devisees, legatees or heirs of George Herbert Shough, son of Jennie D. Shough, or his respective beneficiaries, devisees, legatees or heirs; (4) Defendants Mary Faulkner, Susan M. Eastin, Joyce Day, Linda L. Rivers and Cathy L. Krause own their individual share of a one-half

(1/2) share of the Elliman Interest as beneficiaries, devisees, legatees or heirs of Mary S. Lampert, or her respective beneficiaries, devisees, legatees or heirs; (5) the Plaintiff and all remaining Defendants, and all persons, claiming under them, are directed to execute and record with the Greene county, Pennsylvania Office of the Recorder of Deeds any and all documents reasonably required so that all such party's claimed right, title and interest in Elliman and Shough Interests that are contrary to this Court's Opinion and Order, are relinquished of record; (6) Plaintiff George H. Shough is barred from seeking reimbursement from the Defendants for any portion of the Thirty-Six Dollars ($36,000) paid to the State of Connecticut for the release of its claim against the estate of Mildred S. Elliman; (7) Rice Energy, on behalf of Vantage Energy Appalachia, LLC, successor in Interest to Tanglewood Exploration, LLC and/or other leaseholder is directed to pay bonus moneys, royalties, or any other payment due to the Defendants commensurate with interests pursuant to this Opinion and Order.

On August 11, 2017, Plaintiff filed a Motion for Post-Trial Relief. In his Motion, the Plaintiff alleged that the verdict was contrary to Pennsylvania and Connecticut law and against the weight of the evidence.

On October 3, 2017, the Plaintiff filed a Motion for Leave to Amend Plaintiff's Amended Complaint and Answer to Defendants' Counterclaim.

On October 19, 2017, the Court denied the Plaintiff's Motion for Post-Trial Relief and denied the Plaintiff's Motion for Leave to Amend Plaintiff's Amended Complaint and Answer to Defendants' Counterclaim.

On October 30, 2017, the Plaintiff filed a Motion for Reconsideration of the October 19, 2017, Order of Court. In his Motion, the Plaintiff was seeking reconsideration of the Court's Order denying Plaintiff's Motion for Leave to Amend Plaintiff's Amended Complaint and Answer to the Defendants' Counterclaim.

On the same day, the Court GRANTED reconsideration.[1]

On November 7, 2017, the Plaintiff filed two Notice of Appeal.

On November 15, 2017, the Court entered an Order directing the Plaintiff to file a Concise Statement of Matters Complained of On Appeal within forty-five (45) days of Court Order.

On November 27, 2017 the Plaintiff filed two Concise Statement of Matters Complained of on Appeal.

By Superior Court Order, docketed December 12, 2017, the Superior Court dismissed Plaintiff's Appeal at No. 1657 WDA 2017, while allowing the Plaintiff to raise all properly preserved issues of said appeal at No. 1658 WDA 2017.

The Court, therefore, will address both Concise Statement of Matters Complained of on Appeal in this Opinion.

---

[1] On December 18, 2017, the Court issued an Order denying on the merits the Plaintiff's Motion for Reconsideration.

## DISCUSSION

As previously discussed the Plaintiff has filed two Concise Statement of Matters Complained of on Appeal. The Court will address them accordingly below.

### A. Concise Statement of Matters Complained of on Appeal (1/2)

In his first statement, the Plaintiff maintains that: (1) the Court erred in determining that the estate administrator appointed pursuant to C.G.S.A. § 4a-16 cannot sell or transfer the personal property of a decedent that owed money to the State of Connecticut; (2) alternatively, the Court erred by failing to recognize Plaintiff's priority claim to the Elliman Interest and declaring that that the Elliman Interest transferred to the heirs of Mildred Elliman; (3) the Court erred as a matter of law by its sua sponte decision to bar the Plaintiff from seeking reimbursement of the $36,000.00 he paid to the State of Connecticut for the purchase of the Elliman Interest from the additional heirs.

Concerning the Plaintiff's first two errors, this Court respectfully directs the Court to its August 1, 2017, docketed August 2, 2017, non-jury verdict and opinion as reasons for its findings.

In his third error, the Plaintiff maintains that the Court erred in barring the Plaintiff from seeking reimbursement of the amount paid to the State of Connecticut for the Elliman Interest from the additional heirs.

The Court stands by its recollection and understanding that the Plaintiff requested this Court to order reimbursement of his expenses for the Elliman Interest.

*In Arguendo,* even if the Plaintiff did not specifically request reimbursement from the Court, in the Plaintiff's Amended Complaint in Action to Quiet Title, docketed January 17, 2013, the Plaintiff asked the Court to "provide for such other and further relief as this Court deems just and proper."[2]

Moreover, the Defendants Faulkner, in their Proposed Findings of Fact and Conclusions of Law, docketed April 7, 2017, specifically requested that the Plaintiff be barred from "seeking reimbursement from the Defendants for any portion of the Thirty-Six Thousand Dollars ($36,000.00) paid to the State of Connecticut for the release of its claim against the Estate of Mildred Elliman."[3]

Finally, the Plaintiff testified that he voluntarily tendered the Thirty-Six Thousand Dollars ($36,000.00).[4] When pressed further on why he didn't seek reimbursement from any heir beside Barbara Stewart, specifically the Robson Defendants, the Plaintiff replied it was because he didn't consider them to be Shoughs.[5]

---

[2] Amended Complaint in Action To Quiet Title and For Declaratory Relief and Certificate of Service, docketed January 17, 2013, pg. 11, ¶ H.

[3] Defendants 'Proposed Findings of Fact and Conclusion of Law, docketed April 7, 2017, ¶14(D).

[4] N.T., December 12, 2016, 110-113.

[5] Id.

As such, this Court respectfully submits that it did not err in barring the Plaintiff from seeking reimbursement of the amount paid to the State of Connecticut for the Elliman Interest from the additional heirs.

**B. Concise Statement of Matters Complained of on Appeal (2/2)**

In his second statement, the Plaintiff avers that the Court abused its discretion by denying the Plaintiff's Post-Trial Motion for Leave to Amend his pleadings to conform to the evidence offered and admitted at trial pursuant to Pa. R.C.P. No. 1033.

Concerning this error, this Court respectfully directs the Court to its December 18, 2017 Order finding prejudice in the additional delay to all opposing parties.

As such, this Court respectfully submits that it did not err in denying the Plaintiff's Post-Trial Motion for Leave to Amend his pleadings to conform to the evidence offered and admitted at trial pursuant to Pa. R.C.P. No. 1033.

## CONCLUSION

THUS, for all the aforementioned reasons, this Court respectfully requests that the Court affirm its findings in this action.

**SO ORDERED AND DECREED.**

ATTEST:

_Susan K White_

PROTHONOTARY

BY THE COURT

_Farley Toothman_

FARLEY TOOTHMAN, PRESIDENT JUDGE